IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| | § | No. 564, 2014 |
| IN RE CORNERSTONE | § | |
| THERAPUTICS INC, | § | Court Below: |
| STOCKHOLDER LITIGATION | § | Court of Chancery of the State |
| | § | of Delaware |
| | § | |
| | § | C.A. No. 8922-VCG |

_____

| | | |
|---|---|---|
| RAYMOND LEAL, YAOGUO PAN, | § | |
| and XIAOSONG HU, | § | |
| | § | No. 706, 2014 |
| | § | |
| Defendants Below-Appellants, | § | Court Below: |
| | § | Court of Chancery of the State |
| v. | § | of Delaware |
| | § | |
| PHILLIP MEEKS, ERNESTO | § | C.A. No. 7393-VCN |
| RODRIGUEZ, and ALAN HALL, | § | |
| | § | |
| Plaintiffs Below-Appellees. | § | |

Submitted: May 6, 2015
Decided: May 14, 2015

Before **STRINE**, Chief Justice; **HOLLAND** and **VAUGHN**, Justices; and **BUTLER** and **CLARK**, Judges.[*]

Upon appeal from the Court of Chancery. **REVERSED**.

Donald K. Wolfe, Jr., Esquire, Kevin R. Shannon, Esquire, Christopher N. Kelly, Esquire, Potter Anderson & Corroon LLP, Wilmington, Delaware, for Defendants Below-Appellants Michael Enright, Christopher Codeanne, James A. Harper, Michael Heffernan and Laura Shawver; Kurt Heyman, Esquire, Dawn Kurtz Crompton, Esquire, Proctor Heyman LLP, Wilmington, Delaware, for Defendants Below-Appellants Craig A. Collard and Robert M. Stephan; Anthony M. Candido, Esquire (*Argued*), Robert C. Myers, Esquire, John P. Alexander, Esquire, Clifford Chance US LLP, New York, New York, for Defendants Below-Appellants in *In re Cornerstone Therapeutics Inc. Stockholder Litigation*.

_____

[*] Sitting by designation under Del. Const. art. IV, § 12.

Seth D. Rigrodsky, Esquire, Brian D. Long, Esquire, Gina M. Serra, Esquire, Jeremy J. Riley, Esquire, Rigrodsky & Long, P.A., Wilmington, Delaware; J. Brandon Walker, Esquire, Melissa A. Fortunato, Esquire, Kirby McInerney LLP, New York, New York; Shane Rowley, Esquire, Levi & Korsinsky LLP, New York, New York; Chet B. Waldmann, Esquire (*Argued*), Joshua H. Saltzman, Esquire, Wolf Popper LLP, New York, New York, for Plaintiffs Below-Appellants Edwin Myruski, James Parker, Daniel Blaschak, and David Julier, in *In re Cornerstone Therapeutics Inc. Stockholder Litigation*.

S. Mark Hurd, Esquire (*Argued*), Matthew R. Clark, Esquire, Thomas P. Will, Esquire, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware; Robert H. Pees, Esquire, Akin Gump Strauss Hauer & Field LLP, New York, New York, for Defendants Below-Appellants Raymond Leal, Yaoguo Pan, and Xiaosong Hu.

Seth D. Rigrodsky, Esquire (*Argued*), Brian D. Long, Esquire, Gina M. Serra, Esquire, Jeremy J. Riley, Esquire, Rigrodsky & Long, P.A., Wilmington, Delaware; Donald J. Enright, Esquire, Levi & Korinsky LLP, Washington, DC; Gustavo F. Bruckner, Esquire, Ofer Ganot, Esquire, Pomerantz LLP, New York, New York, for Plaintiffs Below-Appellees Phillip Meeks, Ernesto Rodriguez, and Alan Hall.

**STRINE**, Chief Justice:

# I. INTRODUCTION

These appeals were scheduled for argument on the same day because they turn on a single legal question: in an action for damages against corporate fiduciaries, where the plaintiff challenges an interested transaction that is presumptively subject to entire fairness review, must the plaintiff plead a non-exculpated claim against the disinterested, independent directors to survive a motion to dismiss by those directors?[1] We answer that question in the affirmative. A plaintiff seeking only monetary damages must plead non-exculpated claims against a director who is protected by an exculpatory charter provision to survive a motion to dismiss, regardless of the underlying standard of review for the board's conduct—be it *Revlon*,[2] *Unocal*,[3] the entire fairness standard, or the business judgment rule.

The Court of Chancery in both of these cases denied the defendants' motions to dismiss because it read the precedent of this Court to require doing so, regardless of the exculpatory provision in each company's certificate of incorporation. Under the Court of Chancery's analysis, even if the plaintiffs could not plead a non-exculpated claim against any particular director, as long as the underlying transaction was subject to the entire fairness standard of review, and the plaintiffs were therefore able to state non-exculpated claims against the interested parties and their affiliates, all of the directors were required

---

[1] We have consolidated these appeals for the purpose of issuing one consistent answer to the single question they pose.
[2] *See Revlon v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173 (Del. 1986).
[3] *See Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946 (Del. 1985).

to remain defendants until the end of litigation. The Court of Chancery was reluctant to embrace that result but felt that it was the reading most faithful to our precedent.

In this decision, we hold that even if a plaintiff has pled facts that, if true, would require the transaction to be subject to the entire fairness standard of review, and the interested parties to face a claim for breach of their duty of loyalty, the independent directors do not automatically have to remain defendants. When the independent directors are protected by an exculpatory charter provision and the plaintiffs are unable to plead a non-exculpated claim against them, those directors are entitled to have the claims against them dismissed, in keeping with this Court's opinion in *Malpiede v. Townson*[4] and cases following that decision.[5] Accordingly, we remand both of these cases to allow the Court of Chancery to determine if the plaintiffs have sufficiently pled non-exculpated claims against the independent directors.

## II.    BACKGROUND

These appeals both involve damages actions by stockholder plaintiffs arising out of mergers in which the controlling stockholder, who had representatives on the board of directors, acquired the remainder of the shares that it did not own in a Delaware public corporation.[6] Both mergers were negotiated by special committees of independent

---

[4] *See Malpiede v. Townson*, 780 A.2d 1075, 1094 (Del. 2001).

[5] *See, e.g.*, *In re Morton's Rest. Grp., Inc. S'holders Litig.*, 74 A.3d 656 (Del. Ch. 2013); *see also DiRienzo v. Lichtenstein*, 2013 WL 5503034 (Del. Ch. Sept. 30, 2013); *In re S. Peru Copper Corp. S'holder Derivative Litig.*, 52 A.3d 761 (Del. Ch. 2011), *aff'd sub nom.*, *Americas Mining Corp. v. Theriault*, 51 A.3d 1213 (Del. 2012).

[6] These cases are *In re Zhongpin Inc. S'holders Litig.* and *In re Cornerstone Therapeutics Inc. S'holder Litig.* In *Zhongpin*, Xianfu Zhu, the controlling stockholder, CEO and Chairman of the Board of Zhongpin Inc., a publicly-traded Delaware corporation engaged in meat and food processing, purchased the outstanding shares he did not own through a going-private merger that

directors, were ultimately approved by a majority of the minority stockholders, and were at substantial premiums to the pre-announcement market price.[7] Nonetheless, the plaintiffs filed suit in the Court of Chancery in each case, contending that the directors had breached their fiduciary duty by approving transactions that were unfair to the minority stockholders.

In both appeals, it is undisputed that the companies did not follow the process established in *Kahn v. M&F Worldwide Corporation* as a safe harbor to invoke the business judgment rule in the context of a self-interested transaction.[8] Thus, the entire fairness standard presumptively applied, although the burden of persuasion on that issue

___

closed on June 27, 2013. Before the merger, Zhu owned only 17.3% of the company, but the Court of Chancery determined that the plaintiffs had raised an inference that Zhu held a controlling interest because of his level of control over the management and operations of the company. 2014 WL 6735457, *8 (Del. Ch. Nov. 26, 2014) [hereinafter *Zhongpin*]. In *Cornerstone*, Chiesi Farmaceutici S.p.A., a privately-held drug maker headquartered in Parma, Italy, acquired all of the stock that it did not own in Cornerstone Therapeutics Inc., a public Delaware pharmaceutical company. Before the merger, Chiesi was the beneficial owner of 65.4% of Cornerstone common stock. 2014 WL 4418169, *2 (Del. Ch. Sept. 10, 2014) [hereinafter *Cornerstone*]. For purposes of these appeals, none of the parties in either case dispute the Court of Chancery's determination that the entire fairness standard of review presumptively applies because the going-private transaction at issue involved a controlling stockholder. Nothing in this opinion should be construed as our own evaluation of these issues. Rather, we simply accept that this is the premise on which the common question presented to us in these appeals rests.

[7] Zhu acquired the remaining Zhongpin stock for $13.50 per share in cash, a 47% premium over the closing price of the company's stock the day before the announcement of Zhu's proposal. *See* App. to *Zhongpin* Opening Br. at 63. Chiesi acquired the remaining Cornerstone stock it did not own for $9.50 per share in cash, a 78% premium over the closing price on the date that Chiesi delivered its offer letter to the board. *See* App. to *Cornerstone* Opening Br. at 89.

[8] 88 A.3d 635, 644 (Del. 2014) ("We hold that business judgment is the standard of review that should govern mergers between a controlling stockholder and its corporate subsidiary, where the merger is conditioned *ab initio* upon both the approval of an independent, adequately-empowered Special Committee that fulfills its duty of care; and the uncoerced, informed vote of a majority of the minority stockholders.").

3

might ultimately rest with the plaintiffs.[9]  In both cases, the defendant directors were insulated from liability for monetary damages for breaches of the fiduciary duty of care by an exculpatory charter provision adopted in accordance with 8 *Del. C.* § 102(b)(7). Despite that provision, the plaintiffs in each case not only sued the controlling stockholders and their affiliated directors, but also sued the independent directors who had negotiated and approved the mergers.

In the first of these cases to be decided, *In re Cornerstone Therapeutics Inc. Stockholder Litigation*, the independent director defendants moved to dismiss on the grounds that the plaintiffs had failed to plead any non-exculpated claim against them.[10] The independent directors argued that although the entire fairness standard applied to the Court of Chancery's review of the underlying transaction, and thus the controlling stockholder and its affiliated directors were at risk of being found liable for breaches of the duty of loyalty, the plaintiffs still bore the burden to plead non-exculpated claims against the independent directors.[11]  The independent directors noted that this Court held in *Malpiede v. Townson* that, in the analogous context of review under the *Revlon* standard, plaintiffs seeking damages must plead non-exculpated claims against each individual director or risk dismissal.[12]  The independent directors also pointed out that in

[9] *See id.* at 653-4; *see also Kahn v. Lynch Commc'n Sys., Inc.*, 638 A.2d 1110 (Del. 1994).
[10] *Cornerstone*, 2014 WL 4418169, at *5.
[11] *See id.*
[12] 780 A.2d 1075, 1083-84 (Del. 2001) ("Although the *Revlon* doctrine imposes enhanced judicial scrutiny of certain transactions involving a sale of control, it does not eliminate the requirement that plaintiffs plead sufficient facts to support the underlying claims for a breach of fiduciary duties in conducting the sale."); *id.* at 1094 ("The plaintiffs are entitled to all reasonable inferences flowing from their pleadings, but if those inferences do not support a valid legal claim, the complaint should be dismissed without the need for the defendants to file an

a number of cases, including several affirmed by this Court, the Court of Chancery dismissed claims against independent directors when the plaintiffs failed to plead non-exculpated claims for breaches of fiduciary duty, notwithstanding the applicability of entire fairness review to the transaction.[13]

In response, the plaintiffs argued that the Court of Chancery could not grant the independent directors' motion to dismiss, regardless of whether they had sufficiently pled non-exculpated claims.[14] Under their reading of language in two of the four decisions issued by this Court in the extensive *Emerald Partners* litigation,[15] the plaintiffs contended that they could defeat the independent directors' motions to dismiss solely by establishing that the underlying transaction was subject to the entire fairness standard.[16] In the first of the two relevant *Emerald Partners* decisions ("*Emerald I*"), this Court determined that the plaintiffs had sufficiently pled duty of loyalty claims against the

---

answer and without proceeding with discovery. Here we have assumed, without deciding, that the amended complaint on its face states a due care claim. Because we have determined that the complaint fails properly to invoke loyalty and bad faith claims, we are left with only a due care claim. Defendants had the obligation to raise the bar of Section 102(b)(7) as a defense, and they did. As plaintiffs conceded in oral argument before this Court, if there is only an unambiguous, residual due care claim and nothing else—*as a matter of law*—then Section 102(b)(7) would bar the claim. Accordingly, the Court of Chancery did not err in dismissing the plaintiffs due care claim in this case.").

[13] *See, e.g.*, *DiRienzo v. Lichtenstein*, 2013 WL 5503034 (Del. Ch. Sept. 30, 2013); *In re S. Peru Copper Corp. S'holder Derivative Litig.*, 52 A.3d 761 (Del. Ch. 2011), *aff'd sub nom.*, *Americas Mining Corp. v. Theriault*, 51 A.3d 1213 (Del. 2012); *In re Fredericks of Hollywood, Inc.*, 2000 WL 130630 (Del. Ch. 2000), *aff'd sub nom.*, *Malpiede v. Townson*, 780 A.2d 1075 (Del. 2001); *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720 (Del. Ch. 1999); *In re Gen. Motors Class H S'holders Litig.*, 734 A.2d 611 (Del. Ch. 1999).

[14] *Cornerstone*, 2014 WL 4418169, at *6.

[15] *See Emerald Partners v. Berlin*, 840 A.2d 641 (Del. 2003); *Emerald Partners v. Berlin*, 787 A.2d 85 (Del. 2001) [hereinafter *Emerald II*]; *Emerald Partners v. Berlin*, 726 A.2d 1215 (Del. 1999) [hereinafter *Emerald I*]; *Emerald Partners v. Berlin*, 552 A.2d 482 (Del. 1988).

[16] *See Cornerstone*, 2014 WL 4418169, at *6.

disinterested directors that were "intertwined" with their duty of care claims.[17] In the second of the two decisions ("*Emerald II*"), this Court stated that "when entire fairness is the applicable standard of judicial review, a determination that the director defendants are exculpated from paying monetary damages can be made only *after the basis* for their liability has been decided," on a fully-developed factual record.[18] The *Cornerstone* plaintiffs argued that this language in *Emerald II* should be read broadly to require the court to deny independent directors' motions to dismiss whenever the applicable standard of review is entire fairness.[19] Although the Court of Chancery suggested that it believed that the defendants' view of the law was the preferable one,[20] it nonetheless concluded that it was bound to deny the motion because its reading of the *Emerald II* decision was the one advocated by the plaintiffs.[21]

In *In re Zhongpin Stockholders Litigation*, the independent director defendants also argued that the claims against them should be dismissed because the plaintiffs had

---

[17] *Emerald I*, 726 A.2d at 1218. The Court found the following facts alleged by the plaintiffs to be relevant in determining that the defendants' motion for summary judgment should be denied: "i) [the inside directors'] improper participation in the deliberations of the 'non-affiliated' directors; ii) [the controlling director's] improper contact with [the investment advisor,] Bear Stearns; iii) the complete lack of negotiation of the exchange ratio; iv) the utter disregard for the committee process; and v) the failure to seek an updated fairness opinion." *Id*. at 1220 n.5 (internal quotation marks omitted).
[18] *Emerald II*, 787 A.2d at 94.
[19] *See Cornerstone*, 2014 WL 4418169, at *6.
[20] *See id.* at *10 ("There is much, in my view, to recommend [a particularized] pleading requirement [for independent directors]. It is consistent with our treatment of directors alleged to have breached duties in non-controller-dominated transactions, where the requirement of specific pleading of non-exculpated breaches of duty allows management of the corporation to proceed unaffected by frivolous litigation and protects the directors' ability to pursue appropriate levels of risk without fear of liability, so long as their actions are consistent with the duty of loyalty.").
[21] *See id*. at *12.

6

failed to plead any non-exculpated claims.[22] The Court of Chancery in *Zhongpin* deferred to *Cornerstone*'s interpretation of precedent[23] and held that the claims against the independent directors survived their motion to dismiss "regardless of whether the Complaint state[d] a non-exculpated claim" because the transaction was subject to entire fairness review.[24]

In each case, the Court of Chancery did not analyze the plaintiffs' duty of loyalty claims against the independent directors because it determined that it was required to deny their motions to dismiss regardless of whether such claims had been sufficiently pled.[25] But, recognizing the important and uncertain issue of corporate law at stake, the Court of Chancery in each case recommended certification of an interlocutory appeal to this Court to determine whether its reading of precedent was correct.

### III.    ANALYSIS

In answering the legal question raised by these appeals, we acknowledge that the body of law relevant to these disputes presents a debate between two competing but colorable views of the law. These cases thus exemplify a benefit of careful employment of the interlocutory appeal process: to enable this Court to clarify precedent that could arguably be read in two different ways before litigants incur avoidable costs.

---

[22] *See* App. to *Zhongpin* Opening Br. at 541 (Oral Arg't Defs.' Mot. to Dismiss, July 24, 2014).
[23] *See Zhongpin*, 2014 WL 6735457, at *12 ("Although *In re Cornerstone* questioned the merit of forcing disinterested directors to face the same pleading standard as interested fiduciaries in cases subject to entire fairness, the Court's examination of precedent left it with no other choice.").
[24] *Id.*
[25] *See Zhongpin*, 2014 WL 6735457, at *12; *Cornerstone*, 2014 WL 4418169, at *12.

7

We now resolve the question presented by these cases by determining that plaintiffs must plead a non-exculpated claim for breach of fiduciary duty against an independent director protected by an exculpatory charter provision, or that director will be entitled to be dismissed from the suit. That rule applies regardless of the underlying standard of review for the transaction. When a director is protected by an exculpatory charter provision, a plaintiff can survive a motion to dismiss by that director defendant by pleading facts supporting a rational inference that the director harbored self-interest adverse to the stockholders' interests, acted to advance the self-interest of an interested party from whom they could not be presumed to act independently, or acted in bad faith.[26] But the mere fact that a plaintiff is able to plead facts supporting the application of the entire fairness standard to the transaction, and can thus state a duty of loyalty claim against the interested fiduciaries, does not relieve the plaintiff of the responsibility to plead a non-exculpated claim against each director who moves for dismissal.[27]

---

[26] *See, e.g.*, *Malpiede*, 780 A.2d 1075, 1094 (Del. 2001) (holding that on a motion to dismiss, "[a] plaintiff must allege well-pleaded facts stating a claim on which relief may be granted. Had plaintiff alleged such well-pleaded facts supporting a breach of loyalty or bad faith claim, the Section 102(b)(7) charter provision would have been unavailing as to such claims, and this case would have gone forward"); *Orman v. Cullman*, 794 A.2d 5 (Del. Ch. 2002).

[27] *See Malpiede*, 780 A.2d at 1094; *see also Emerald II*, 787 A.2d at 92 (citing *Malpiede* with approval for the proposition that "unless there is a violation of the duty of loyalty or the duty of good faith, a trial on the issue of entire fairness is unnecessary because a Section 102(b)(7) provision will exculpate director defendants from paying monetary damages that are exclusively attributable to a violation of the duty of care"); *Emerald I*, 726 A.2d at 1224 ("Nonetheless, where the factual basis for a claim *solely* implicates a violation of the duty of care, this Court has indicated that the protections of such a [Section 102(b)(7)] charter provision may properly be invoked and applied."); *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 650 A.2d 1270 (Del. 1994); *Wayne Cnty. Employees' Ret. Sys. v. Corti*, 2009 WL 2219260 (Del. Ch. July 24, 2009), *aff'd*, 996 A.2d 795 (Del. 2010) (granting defendants' motion to dismiss when plaintiffs failed to state a non-exculpated claim against the director defendants for breach of fiduciary duty); *In re Lukens*

8

No doubt, the invocation of the entire fairness standard has a powerful pro-plaintiff effect against interested parties.[28] When that standard is invoked at the pleading stage, the plaintiffs will be able to survive a motion to dismiss by interested parties regardless of the presence of an exculpatory charter provision because their conflicts of interest support a pleading-stage inference of disloyalty.[29] Indeed, as to the interested party itself, a finding of unfairness after trial will subject it to liability for breach of the duty of loyalty regardless of its subjective bad faith.[30]

---

*Inc. S'holders Litig.*, 757 A.2d 720, 734 (Del. Ch. 1999), *aff'd sub nom.*, *Walker v. Lukens, Inc.*, 757 A.2d 1278 (Del. 2000) (same).

[28] *See, e.g.*, *Mills Acquisition Co. v. Macmillan, Inc.*, 559 A.2d 1261, 1279 (Del. 1989) (internal citations omitted) (quoting *AC Acquisitions v. Anderson, Clayton & Co.*, 519 A.2d 103, 111 (Del. Ch. 1986)) ("Obviously, application of the correct analytical framework is essential to a proper review of challenges to the decision-making processes of a corporate board. [B]ecause the effect of the proper invocation of the business judgment rule is so powerful and the standard of entire fairness so exacting, the determination of the appropriate standard of judicial review frequently is determinative of the outcome of derivative litigation."); *In re Trados Inc. S'holder Litig.*, 73 A.3d 17, 44 (Del. Ch. 2013) ("Entire fairness, Delaware's most onerous standard, applies when the board labors under actual conflicts of interest. Once entire fairness applies, the defendants must establish to the court's satisfaction that the transaction was the product of both fair dealing and fair price. Not even an honest belief that the transaction was entirely fair will be sufficient to establish entire fairness. Rather, the transaction itself must be objectively fair, independent of the board's beliefs.") (internal citations and quotation marks omitted); Edward P. Welch, et al., *Mergers & Acquisitions Deal Litigation Under Delaware Corporation Law* § 4.02[A][2] (2014) ("The applicable standard of review can have nearly dispositive consequences in deal litigation alleging a breach of fiduciary duty. When a decision is made by a majority of well-informed, disinterested, and independent directors, that decision is generally protected by the deferential business judgment rule . . . . When the business judgment rule is overcome, and/or when a controlling stockholder stands on both sides of a challenged transaction, the courts may apply the more rigorous entire fairness standard of review.").

[29] *See, e.g.*, *Gantler v. Stevens*, 965 A.2d 695 (Del. 2009) (holding that the plaintiffs had "alleged specific conduct from which a duty of loyalty violation can reasonably be inferred," and thus, finding that the Court of Chancery had erred in dismissing the relevant counts against the defendant directors); *Kahn v. Lynch Commc'ns Syst., Inc.*, 638 A.2d 1110, 1115 (Del. 1994).

[30] *See, e.g.*, *Venhill Ltd. P'ship v. Hillman*, 2008 WL 2270488, at *22 (Del. Ch. June 3, 2008) ("As I understand it, only the self-dealing director would be subject to damages liability for the gap between a fair price and the deal price without an inquiry into his subjective state of mind. Why? Because under the traditional operation of the entire fairness standard, the self-dealing

The stringency of after-the-fact entire fairness review by the court intentionally puts strong pressure on the interested party and its affiliates to deal fairly before-the-fact when negotiating an interested transaction. To accomplish this, the burden of proving entire fairness in an interested merger falls on the "the controlling or dominating shareholder proponent of the transaction."[31] But applying the entire fairness standard against interested parties does not relieve plaintiffs seeking damages of the obligation to plead non-exculpated claims against each of the defendant directors.[32]

In *Malpiede*, this Court analyzed the effect of a Section 102(b)(7) provision on a due care claim against directors who approved a transaction which the plaintiffs argued should be subject to review under the *Revlon* standard. This Court noted that although "plaintiffs are entitled to all reasonable inferences flowing from their pleadings, . . . if

---

director would have breached his duty of loyalty if the transaction was unfair, regardless of whether he acted in subjective good faith. After all, that is the central insight of the entire fairness test, which is that when a fiduciary self-deals he might unfairly advantage himself even if he is subjectively attempting to avoid doing so."); *In re PNB Holding Co. S'holders Litig.*, 2006 WL 2403999, *22 n.117 (Del. Ch. Aug. 18, 2006) ("I perceive no basis in this trial record to conclude that the PNB directors intended to deal unfairly with the departing PNB stockholders; that is, that they in bad faith sought to underpay in the Merger. . . . In other words, although I find for structural reasons that the directors owed a duty of fair treatment to the departing minority, and fell short of meeting that duty, I do not find that they fell short out of bad faith.").

[31] *Lynch*, 638 A.2d at 1117 (citing *Weinberger v. UOP, Inc.*, 457 A.2d 701, 710–11 (Del. 1983)); *see also Sterling v. Mayflower Hotel Corp.*, 93 A.2d 107, 110 (Del. 1952) ("Since [the interested party] stand[s] on both sides of the transaction, they bear the burden of establishing its entire fairness, and it must pass the test of careful scrutiny by the courts.").

[32] We focus here on damages because that is the issue before us. The entire fairness doctrine also has a potent effect in cases where equitable relief, such as rescission, is a viable remedy, but the existence of a Section 102(b)(7) charter provision might not have the same case-dispositive effect under those circumstances. *See, e.g.*, *London v. Tyrrell*, 2010 WL 877528, at *18 (Del. Ch. Mar. 11, 2010) ("Delaware law permits a suit seeking rescission to go forward despite a § 102(b)(7) provision protecting directors against monetary judgments.").

10

those inferences do not support a valid legal claim, the complaint should be dismissed."[33]

Because a director will only be liable for monetary damages if she has breached a non-exculpated duty, a plaintiff who pleads only a due care claim against that director has not set forth any grounds for relief. In such a case, "*as a matter of law* [] then Section 102(b)(7) would bar the claim."[34]

Nevertheless, the plaintiffs in each of these cases contend that their exculpated claims against the independent directors cannot be dismissed solely because the transaction at issue is subject to entire fairness review. The plaintiffs argue that they should be entitled to an automatic inference that a director facilitating an interested transaction is disloyal because the possibility of conflicted loyalties is heightened in controller transactions, and the facts that give rise to a duty of loyalty breach may be unknowable at the pleading stage.[35] But there are several problems with such an inference: to require independent directors to remain defendants solely because the plaintiffs stated a non-exculpated claim against the controller and its affiliates would be inconsistent with Delaware law and would also increase costs for disinterested directors, corporations, and stockholders, without providing a corresponding benefit.

First, this Court and the Court of Chancery have emphasized that each director has a right to be considered individually when the directors face claims for damages in a suit

---

[33] *Malpiede*, 780 A.2d 1075, 1094 (Del. 2001).

[34] *Id.*; *see also In re Synthes, Inc. S'holder Litig.*, 50 A.3d 1022, 1032 (Del. Ch. 2012) ("Because the directors on the Board are protected by the § 102(b)(7) provision exculpating them for personal liability stemming from a breach of the duty of care, the complaint must be dismissed against the directors unless the plaintiffs have successfully pled non-exculpated claims for breach of the duty of loyalty against them.").

[35] *See Cornerstone*, 2014 WL 4418169, at *11; *Zhongpin* Opening Br. at 21-22.

challenging board action.[36] And under Delaware corporate law, that individualized consideration does not start with the assumption that each director was disloyal; rather, "independent directors are presumed to be motivated to do their duty with fidelity."[37]

[36] *See, e.g.*, *McMullin v. Beran*, 765 A.2d 910, 923 (Del. 2000) ("In assessing director independence, Delaware courts apply a subjective 'actual person' standard to determine whether a 'given' director was likely to be affected in the same or similar circumstances."); *Smith v. Van Gorkom*, 488 A.2d 858, 899 (Del. 1985) (denying motion for reargument brought by individual directors complaining that their individual responsibility was not considered by the Court, but only because those directors had made no effort earlier in the case to present a defense distinct from the rest of the board, even though "a special opportunity was afforded the individual defendants . . . to present any factual or legal reasons why each or any of them should be individually treated" at oral argument); *Chen v. Howard-Anderson*, 87 A.3d 648, 677 (Del. Ch. 2014) (quoting *In re Emerging Commc'ns S'holders Litig.*, 2004 WL 1305745, at *38 (Del. Ch. May 3, 2004) ("The liability of the directors must be determined on an individual basis because the nature of their breach of duty (if any), and whether they are exculpated from liability for that breach, can vary for each director."); *In re S. Peru Copper Corp. S'holder Derivative Litig.*, 52 A.3d 761, 787 n.72 (Del. Ch. 2011) ("The entire fairness standard ill suits the inquiry whether *disinterested directors* who approve a self-dealing transaction and are protected by an exculpatory charter provision authorized by 8 Del. C. § 102(b)(7) can be held liable for breach of fiduciary duties. Unless there are facts suggesting that the directors consciously approved an unfair transaction, the bad faith preference for some other interest than that of the company and the stockholders that is critical to disloyalty is absent. The fact that the transaction is found to be unfair is of course relevant, but hardly sufficient, to that separate, individualized inquiry."), *aff'd sub nom.*, *Americas Mining Corp. v. Theriault*, 51 A.3d 1213 (Del. 2012); *Steinman v. Levine*, 2002 WL 31761252, *15 n.81 (Del. Ch. Nov. 27, 2002) (holding that a plaintiff "is required to identify specific acts of individual defendants . . . for his claim to survive"), *aff'd*, 822 A.2d 397 (Del. 2003); *Shandler v. DLJ Merchant Banking, Inc.*, 2010 WL 2929654, *12 (Del. Ch. July 26, 2010) (assessing allegations against directors separately to determine whether the complaint stated a non-exculpated claim for relief); 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1248 (3d ed. 2015) ("[I]n order to state a claim for relief, actions brought against multiple defendants must clearly specify the claims with which each individual defendant is charged.").

[37] *In re MFW S'holders Litig.*, 67 A.3d 496, 528 (Del. Ch. 2013) ("Although it is possible that there are independent directors who have little regard for their duties or for being perceived by their company's stockholders (and the larger network of institutional investors) as being effective at protecting public stockholders, the court thinks they are likely to be exceptional, and certainly our Supreme Court's jurisprudence does not embrace such a skeptical view."), *aff'd sub nom.*, *Kahn v. M & F Worldwide Corp.*, 88 A.3d 635 (Del. 2014); *see also Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1048 (Del. 2004) ("[D]irectors are entitled to a presumption that they were faithful to their fiduciary duties."); *Aronson v. Lewis*, 473 A.2d 805, 815 (Del. 1984); *Robinson v. Pittsburgh Oil Ref. Corp.*, 126 A. 46, 48 (Del. Ch. 1924) ("[T]he sale in question must be examined with the presumption in its favor that the

Thus, in *Aronson v. Lewis*, this Court emphasized that the mere fact that a director serves on the board of a corporation with a controlling stockholder does not automatically make that director not independent.[38] This Court has similarly refused to presume that an independent director is not entitled to the protection of the business judgment rule solely because the controlling stockholder may itself be subject to liability for breach of the duty of loyalty if the transaction was not entirely fair to the minority stockholders.[39]

Adopting the plaintiffs' approach would not only be inconsistent with these basic tenets of Delaware law, it would likely create more harm than benefit for minority stockholders in practice.[40] Our common law of corporations has rightly emphasized the

---

directors who negotiated it honestly believed that they were securing terms and conditions which were expedient and for the corporation's best interests.").

[38] *See, e.g.*, *Aronson*, 473 A.2d at 815 ("[E]ven proof of majority ownership of a company does not strip the directors of the presumptions of independence, and that their acts have been taken in good faith and in the best interests of the corporation. There must be coupled with the allegation of control such facts as would demonstrate that through personal or other relationships the directors are beholden to the controlling person.").

[39] *See S. Peru*, 52 A.3d at 785 (Del. Ch. 2011) (determining, after trial, that the controller and its affiliated directors were liable for damages because the interested transaction at issue was not entirely fair to the minority stockholders, even though the independent directors had properly been dismissed on summary judgment "because the plaintiff had failed to present evidence supporting a non-exculpated breach of their fiduciary duty of loyalty"); *see also Aronson*, 473 A.2d at 816 (holding "that in the demand-futile context a plaintiff charging domination and control of one or more directors must allege particularized facts," *i.e.*, specific facts that each director was violating their duty of loyalty, to rebut the protection of the business judgment rule).

[40] It also seems unlikely that the rule we embrace today will create any problem of under-compensation for minority stockholders who challenge controller transactions. Interested fiduciaries, often the proverbial deep-pocketed defendants, will continue to be required to prove that the transaction was entirely fair to the minority stockholders, because the plaintiffs' well-pled claims against the interested parties in a controller transaction cannot be dismissed before trial, regardless of whether the independent directors remain as defendants. And if plaintiffs do not have sufficient evidence to plead non-exculpated claims against the independent directors at the pleading stage, they may bring such claims later. Because most transactions are brought immediately after—or even before—the announcement of the challenged, but still typically unconsummated, transaction, plaintiffs will usually have ample time to bring well-pled claims that the independent directors breached their duty of loyalty within the three-year statute of

need for independent directors to be willing to say no to interested transactions proposed by controlling stockholders.[41] For that reason, our law has long inquired into the practical negotiating power given to independent directors in conflicted transactions.[42] Although it is wise for our law to focus on whether the independent directors can say no, it does not follow that it is prudent to create an invariable rule that any independent director who says yes to an interested transaction subject to entire fairness review must remain as a defendant until the end of the litigation, regardless of the absence of any evidence suggesting that the director acted for an improper motive.

For more than a generation, our law has recognized that the negotiating efforts of independent directors can help to secure transactions with controlling stockholders that are favorable to the minority.[43] Indeed, respected scholars have found evidence that interested transactions subject to special committee approval are often priced on terms

---

limitations period. *See* 10 *Del. C.* § 8106; *see also* Elliott J. Weiss & Lawrence J. White, *File Early, Then Free Ride: How Delaware Law (Mis)shapes Shareholder Class Actions*, 57 Vand. L. Rev. 1797, 1827 (2004) (finding that the large majority of transactions are challenged within two days of announcement and before consummation).

[41] *See, e.g.*, *In re MFW S'holders Litig.*, 67 A.3d at 518 ("To the extent that the fundamental rule is that a special committee should be given standard-influencing effect if it replicates arm's-length bargaining, that test is met if the committee is independent, can hire its own advisors, has a sufficient mandate to negotiate and the power to say no, and meets its duty of care."); *see also Kahn v. Lynch Commc'n Sys., Inc.*, 638 A.2d 1110, 1119 (Del. 1994) (quoting *In re First Boston, Inc. S'holders Litig.*, 1990 WL 78836, at *15–16 (Del. Ch. June 7, 1990)) ("The power to say no is a significant power. It is the duty of directors serving on [an independent] committee to approve only a transaction that is in the best interests of the public shareholders, to say no to any transaction that is not fair to those shareholders and is not the best transaction available.").

[42] *E.g.*, *Kahn v. Tremont Corp.*, 694 A.2d 422, 429 (Del. 1997).

[43] *Weinberger v. UOP, Inc.*, 457 A.2d 701, 709 n.7 (Del. 1983) ("Although perfection is not possible, or expected, the result here could have been entirely different if UOP had appointed an independent negotiating committee of its outside directors to deal with Signal at arm's length.").

14

that are attractive to minority stockholders.[44] We decline to adopt an approach that would create incentives for independent directors to avoid serving as special committee members, or to reject transactions solely because their role in negotiating on behalf of the stockholders would cause them to remain as defendants until the end of any litigation challenging the transaction.[45]

As is well understood, the fear that directors who faced personal liability for potentially value-maximizing business decisions might be dissuaded from making such decisions is why Section 102(b)(7) was adopted in the first place. As this Court explained in *Malpiede*, "Section 102(b)(7) was adopted by the Delaware General

---

[44] *See, e.g.*, Thomas W. Bates, Michael L. Lemmon, & James S. Linck, *Shareholder Wealth Effects and Bid Negotiation in Freeze-out Deals: Are Minority Shareholders Left Out in the Cold?*, 81 J. FIN. ECON. 681, 706 (2006) (reporting evidence to support the hypothesis that "active board representation and implicit legal recourse" benefit stockholders in the tender offer context); Guhan Subramanian, *Fixing Freezeouts*, 115 YALE L.J. 2, 25 (2005) (discussing the role of "vigorous bargaining" by special committees in increasing premiums for minority stockholders in merger freezeouts, compared to tender offer freezeouts effected without special committees); James F. Cotter, Anil Shivdasani, & Marc Zenner, *Do Independent Directors Enhance Target Shareholder Wealth During Tender Offers?*, 43 J. OF FIN. ECON. 195 (1997) (finding that, in the context of a tender offer, the presence of an independent board increases the tender offer bid premium and overall stockholder gains).

[45] Such an approach might also provide incentives for a controlling stockholder to proceed by means of a tender offer to the minority stockholders, and thus potentially avoid the need to actively negotiate with a special committee. *See generally In re Siliconix Inc. S'holders Litig.*, 2001 WL 716787 (Del. Ch. June 19, 2001) (holding, under its reading of *Solomon v. Pathe Commc'ns Corp.*, 672 A.2d 35 (Del. 1996), and other similar cases, that a going-private tender transaction made by way of a tender offer is not subject to entire fairness review); *but see In re Cox Commc'ns, Inc. S'holders Litig.*, 879 A.2d 604, 646 (Del. Ch. 2005) (suggesting that the equitable standard to review fiduciary conduct in the context of tender offer transactions should, if possible, be aligned with the equitable standard of review for controller-going-private transactions consummated by merger). Empirical evidence exists suggesting that going-private tender offers are priced less favorably to stockholders than interested-party transactions negotiated and approved by special committees of independent directors. *See* Guhan Subramanian, *Post-Siliconix Freeze–Outs: Theory and Evidence*, 36 J. LEGAL STUD. 1 (2007) (reporting, based on a database of all freeze-outs of Delaware targets executed in the four years after the Court of Chancery decided *Siliconix*, that controlling stockholders pay less, on average, to minority stockholders in tender offer freeze-outs than in merger freeze-outs).

Assembly in 1986 following a directors and officers insurance liability crisis and the 1985 Delaware Supreme Court decision in *Smith v. Van Gorkom*."[46] Because of that "crisis," the General Assembly feared that directors would not be willing to make decisions that would benefit stockholders if they faced personal liability for making them. The purpose of Section 102(b)(7) was to "free[] up directors to take business risks without worrying about negligence lawsuits."[47] Establishing a rule that all directors must remain as parties in litigation involving a transaction with a controlling stockholder would thus reduce the benefits that the General Assembly anticipated in adopting Section 102(b)(7).

We understand that the plaintiffs, and certain members of the Court of Chancery, have read the decisions this Court issued in the complex circumstances of the *Emerald Partners* litigation to support a different conclusion than we reach here. But the Court in *Emerald Partners* was focused on a separate question; namely, whether courts can consider the effect of a Section 102(b)(7) provision before trial when the plaintiffs have pled facts supporting the inference not only that each director breached not just his duty of care, but also his duty of loyalty, when the applicable standard of review of the underlying transaction is entire fairness.[48] In that circumstance, the Court held that the

---

[46] 780 A.2d 1075, 1095 (Del. 2001) (citing *Smith v. Van Gorkom*, 488 A.2d 858 (Del. 1985)).

[47] *Id.*; *see also Prod. Res. Grp., LLC v. NCT Grp., Inc.*, 863 A.2d 772, 777 (Del. Ch. 2004) ("One of the primary purposes of § 102(b)(7) is to encourage directors to undertake risky, but potentially value-maximizing, business strategies, so long as they do so in good faith.").

[48] In the *Emerald Partners* litigation, the plaintiffs brought a derivative and class action suit following the corporation's merger with its controlling stockholder, alleging that the merger was not entirely fair and that the defendant directors violated disclosure rules. The defendants did not move to dismiss, but moved for summary judgment after discovery. The Court of Chancery granted that motion, concluding that the plaintiff's allegations supported a duty of care violation

16

determination of whether any failure of the putatively independent directors was the result of disloyalty or a lapse in care was best determined after a trial, because the substantive fairness inquiry would shed light on why the directors acted as they did.[49] The sentence in *Emerald II* that the plaintiffs claim is dispositive here must be understood in that context, as referring to a case where there was a viable, non-exculpated loyalty claim against each putatively independent director. The *Emerald Partners* litigation thus did not answer the specific question at issue in these appeals, whether the application of the entire fairness standard requires the Court of Chancery to deny a motion to dismiss by independent directors even when the plaintiffs may not have sufficiently pled a non-exculpated claim against those directors. Indeed, much of the language in the *Emerald Partners* decisions issued by this Court is consistent with the answer we reach here. For example, this Court observed in *Emerald II* that:

> The rationale of *Malpiede* constitutes judicial cognizance of a practical reality: unless there is a violation of the duty of loyalty or the duty of good faith, a trial on the issue of entire fairness is unnecessary because a Section 102(b)(7) provision will exculpate director defendants from paying monetary damages that are exclusively attributable to a violation of the duty of care. The effect of our holding in *Malpiede* is that, in actions against the directors of Delaware corporations with a Section 102(b)(7)

___

at most, and that the company's Section 102(b)(7) charter provision exculpated the defendants from liability. *See Emerald Partners v. Berlin*, 1995 WL 600881, *1 (Del. Ch. Sept. 22, 1995). This Court reversed, holding that several issues remained that implicated the independent directors' duty of loyalty, including the plaintiff's claim that the directors had misrepresented that negotiations were arm's-length in the proxy statement. *See Emerald I*, 726 A.2d at 1223. Because "the entire fairness and disclosure claims under [those] circumstances were intertwined," the defendants could not invoke § 102(b)(7) at that stage of the proceedings. *Id.* In other words, this Court found that the plaintiffs had successfully shown that issues of fact remained that implicated the independent directors' duty of loyalty, and because those issues were not separable from the factual issues about whether the transaction was fair, the independent directors' motion for summary judgment was properly denied.

[49] *See Emerald I*, 726 A.2d at 1218.

17

charter provision, a shareholder's complaint must allege well-pled facts that, if true, implicate breaches of loyalty or good faith.[50]

Thus, to the extent that other isolated statements in *Emerald Partners* could be interpreted as inconsistent with the result we reach today, we clarify that the *Emerald Partners* decisions should be read in their case-specific context and not for the broad proposition that the plaintiffs advocate. The reading of the *Emerald Partners* decisions we embrace is also the one adopted by the Court of Chancery itself in *DiRienzo v. Lichtenstein*.[51] In that case, the Court of Chancery recognized that the *Emerald Partners* decisions had to be read in the context of their facts, where there was sufficient record evidence to attribute any lack of effectiveness in the putatively independent directors' handling of the transaction to either a breach of the duty of loyalty (*e.g.*, as the result of bad faith) or a lack of care. The Court of Chancery thus observed that "the directors in *Emerald Partners* were precluded from relying on a 102(b)(7) charter provision by virtue of their conduct, not because the transaction was subject to entire fairness review for other reasons."[52] In other words, *DiRienzo* interpreted the *Emerald Partners* decisions as standing for the mundane proposition that a defendant cannot obtain dismissal on the basis of an exculpatory provision when there is evidence that he committed a non-exculpated breach of fiduciary duty.[53]

---

[50] *Emerald II*, 787 A.2d at 92.

[51] 2013 WL 5503034 (Del. Ch. Sept. 30, 2013), *appeal refused*, 80 A.3d 959 (Del. 2013).

[52] *Id*. at *11.

[53] We note this, not to fault those who read the complicated *Emerald Partners* decisions differently than we now do or *DiRienzo* did, but to emphasize that our ultimate duty is to give those cases the most reasonable reading we can, based on their full context. *See In re MFW S'holders Litig.*, 67 A.3d 496, 524 (Del. 2013) ("Admittedly, there is broad language in each of these decisions, and in some other cases, that can be read to control the question asked in this

18

Thus, when a complaint pleads facts creating an inference that seemingly independent directors approved a conflicted transaction for improper reasons, and thus, those directors may have breached their duty of loyalty, the pro-plaintiff inferences that must be drawn on a motion to dismiss counsels for resolution of that question of fact only after discovery.[54] By contrast, when the plaintiffs have pled no facts to support an inference that any of the independent directors breached their duty of loyalty, fidelity to the purpose of Section 102(b)(7) requires dismissal of the complaint against those directors. Accordingly, we reverse the judgments of the Court of Chancery denying the independent directors' motions to dismiss, and remand each case for the Court of Chancery to determine if the plaintiffs have sufficiently pled facts suggesting that the independent directors committed a non-exculpated breach of their fiduciary duty.

---

case. But this, like all judicial language, needs to be read in full context, as our Supreme Court itself has emphasized."), *aff'd sub nom.*, *Kahn v. M & F Worldwide Corp.*, 88 A.3d 635 (Del. 2014).

[54] By parity of reasoning, if after discovery, there is evidence from which a fact-finder could conclude that the independent directors breached their duty of loyalty, a trial is necessary to determine the directors' liability.