**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| VLADIMIR FISHEL, KAPITALFORENINGEN SAMPENSION INVEST, GLOBALT AKTIEINDEKS and KAPITALFORENINGEN SAMPENSION INVEST, GLOBALT AKTIEINDEKS ENHANCED,<br><br>Plaintiffs,<br><br>v.<br><br>LIBERTY MEDIA CORPORATION, JOHN C. MALONE, GREGORY B. MAFFEI, EDDY W. HARTENSTEIN, JAMES P. HOLDEN, DAVID A. BLAU, ROBIN P. HICKENLOOPER, JENNIFER WITZ, EVAN MALONE, JAMES MEYER, JONELLE PROCOPE, MICHAEL RAPINO, KRISTINA SALEN, CARL E. VOGEL, and DAVID ZASLAV,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 2024-1057-KSJM |

**ORDER DENYING APPLICATION TO
CERTIFY INTERLOCUTORY APPEAL**

1. Plaintiffs challenge the September 2024 spin-off of SiriusXM Holdings Inc. by its controller, Liberty Media Corporation.[1] Before the spin-off, the board formed a special committee to address the controller's conflict. The committee

---

[1] Terms not defined in this Order have the same meaning as in *Fishel v. Liberty Media Corp.*, 2026 WL 982224 (Del. Ch. Apr. 13, 2026) ["*Opinion*"].

recommended the spin-off, which the board then approved. The deal created a new independent company with no controller and eliminated Liberty's tracking stock. Before the spin-off, the tracking stock traded below the value of its underlying assets. Eliminating the tracking stock removed that discount, which created an allegedly multi-billion-dollar benefit for Liberty alone.

2. Plaintiffs asserted claims challenging the spin-off on behalf of a class of minority stockholders. Defendants fall into three categories: the Liberty Defendants, the Committee Defendants, and the Non-Committee Defendants. The Committee Defendants and Non-Committee Defendants moved to dismiss the Complaint under *In re Cornerstone Therapeutics Inc., Stockholder Litigation.*[2] The Liberty Defendants did not move to dismiss the Complaint. In a Memorandum Opinion dated April 13, 2026 (the "Opinion"), the court granted the Committee Defendants' motion but denied the Non-Committee Defendants' motion.

3. The Non-Committee Defendants applied for certification of an interlocutory appeal of the Opinion (the "Application").[3] Supreme Court Rule 42 permits certification of interlocutory appeal when "the order of the trial court decides a substantial issue of material importance that merits appellate review before a final judgment."[4] If the "substantial issue" requirement is met, this court will then analyze eight factors to determine whether "there are substantial benefits that will outweigh

---

[2] 115 A.3d 1173, 1180 (Del. 2015).

[3] C.A. No. 2024-1057-KSJM, Docket ("Dkt.") 91 ("Application").

[4] Supr. Ct. R. 42(b)(i).

2

the certain costs that accompany an interlocutory appeal."[5]  Rule 42 cautions that "[i]nterlocutory appeals should be exceptional, not routine, because they disrupt the normal procession of litigation, cause delay, and can threaten to exhaust scarce party and judicial resources."[6]  This language of Rule 42 serves as an interpretive principle, requiring that the court interpret the factors such that interlocutory appeals are exceptional, not routine.[7]

## Substantial Issue

4.      "The 'substantial issue' requirement is met when an interlocutory order decides a main question of law which relates to the merits of the case[.]"[8]  The Opinion decided a substantial issue because it resolved a Rule 12(b)(6) motion, which is a merits-based motion and is substantial in that way.[9]

## Multi-Factor Analysis

5.      Because the substantial-issue requirement is satisfied, the discussion turns to a multi-factor analysis of whether a substantial benefit outweighs the costs

---

[5] *Id.* R. 42(b)(ii), (iii)(A)–(H).

[6] *Id.* R. 42(b)(ii).

[7] *Id.* R. 42(b)(iii) (stating that "[i]f the balance is uncertain, the trial court should refuse to certify the interlocutory appeal"); *see also* Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 18.04[c] (2d ed. 2024).

[8] *Riskin v. Burns*, 2021 WL 303999, at *1 (Del. Ch. Jan. 29, 2021) (quoting *Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2861717, at *1 (Del. Ch. July 22, 2008)).

[9] *Id.*

of an interlocutory appeal.[10]  Rule 42 identifies eight factors to consider when conducting this balancing analysis.[11]

6.    The Non-Committee Defendants rely on two of the Rule 42 factors—Factors (B) and (H).  By failing to advance arguments under the other six factors, the Non-Committee Defendants concede that those factors do not weigh in favor of certifying interlocutory appeal.

7.    ***Factor (B)*** asks whether "[t]he decisions of the trial courts are conflicting upon the question of law[.]"[12]  The Non-Committee Defendants argue that decisions of this court conflict on one issue: *Cornerstone* requires that, to state a non-exculpated claim against directors who lack independence from an interested person, a plaintiff must plead that the director "acted to advance the self-interest of an interested party."[13]  The Opinion refers to this as the "action element" of *Cornerstone*.[14]  Is alleging that a director voted in favor of the challenged transaction sufficient to satisfy *Cornerstone*'s action element?[15]  The Non-Committee Defendants argue that six decisions of this court are split into two groups on this issue.[16]

8.    Three decisions of this court answer the question in the affirmative: the Opinion, *Firefighters' Pension System of City of Kansas City v. Foundation Building*

---

[10] *See* Supr. Ct. R. 42(b)(ii), (iii)(A)–(H).

[11] *Id.* R. 42(b)(iii)(A)–(H).

[12] *Id.* R. 42(b)(iii)(B).

[13] *Cornerstone*, 115 A.3d at 1180.

[14] *Opinion* at *8.

[15] Application ¶ 4.

[16] *Id.* ¶¶ 17–25.

4

*Materials, Inc.*,[17] and the pleading-stage decision in *In re BGC Partners, Inc. Derivative Litigation* (“*BGC I*”).[18]

9. The Opinion concluded that a director vote in favor of a transaction “unquestionably advances the transaction” and thus satisfies the action element at the pleading stage.[19] Both *Foundation Building Materials* and *BGC I* take the commonsense approach of the Opinion. In *Foundation Building Materials*, the court held that “[a]ll that a claim for breach of fiduciary duty requires is a showing that the conflicted fiduciaries voted in favor of the interested transaction.”[20] Similarly, in *BGC I*, the court held that “by voting to approve the Transaction, [the director defendants] acted to advance the self-interest of an interested party who stood on both sides of the Transaction[.]”[21]

10. This approach is consistent with Delaware's board-centric model. The Delaware General Corporation Law (the “DGCL”) vests corporate decision-making authority in the board of directors.[22] Majority votes bind the board and thus the corporation they manage.[23] Under the DGCL, directors' votes can determine myriad

---

[17] 318 A.3d 1105 (Del. Ch. 2024).

[18] 2019 WL 4745121 (Del. Ch. Sep. 30, 2019) [“*BGC I*”].

[19] *Opinion* at *8.

[20] *Found. Bldg. Mat'ls*, 318 A.3d at 1163.

[21] *BGC I*, 2019 WL 4745121, at *14.

[22] *See* 8 *Del. C.* § 141(a); *see also In re Numoda Corp. S'holders Litig.*, 2015 WL 402265, at *9 (Del. Ch. Jan. 30, 2015), *aff'd sub nom.*, *In re Numoda Corp.*, 128 A.3d 991 (Del. 2015) (“Corporate acts are driven by board meetings, at which directors make formal decisions.”).

[23] *See* 8 *Del. C.* §§ 141(a), (b).

5

corporate actions including the issuance of dividends,[24] the formation of committees,[25] and amendments to bylaws.[26] For decisions such as charter amendments,[27] mergers,[28] and dissolution,[29] the DGCL requires board action in addition to stockholder votes. Board votes thus carry significant weight under the DGCL.

11. For this reason, Delaware law encourages conflicted directors to abstain from board processes—including the ultimate board vote—to avoid liability. In *Weinberger v. UOP, Inc.*, the Supreme Court expressly "command[ed] . . . that directors who have a conflict of interest relating to a proposed transaction should totally abstain from participating in the board's consideration of that transaction."[30] Consistent with the DGCL and Supreme Court precedent, the Opinion reasoned that "[v]oting in favor of a transaction unquestionably advances the transaction" because it is often "the ultimate action needed to complete the transaction."[31] Effectively, the Non-Committee Defendants ask the court to treat, for *Cornerstone* purposes, a vote in favor of a transaction as a recusal. The Opinion rejected that argument.

---

[24] *Id.* § 170(a).

[25] *Id.* § 141(c)(2).

[26] *Id.* § 109(a).

[27] *Id.* § 242(b)(1).

[28] *Id.* § 251.

[29] *Id.* § 275(a).

[30] *In re Tri-Star Pictures, Inc. Litig.*, 1995 WL 106520, at *3 (Del. Ch. Mar. 9, 1995) (citing *Weinberger v. UOP, Inc.*, 457 A.2d 701, 711 (Del. 1983)).

[31] *Opinion* at *8.

6

12.    According to the Non-Committee Defendants, three decisions go the other way: *Klein v. H.I.G. Capital, L.L.C.*,[32] *Atallah v. Malone*,[33] and the summary judgment decision in *In re BGC Partners, Inc. Derivative Litigation* ("*BGC II*").[34]  In *Klein*, plaintiffs asserted that the CEO advanced the controller's interest by approving three transactions.[35]  The court rejected this theory stating that, "[t]he contention is theoretically plausible given that [the CEO] . . . may have been motivated to curry favor with [the controller] to maintain his position as CEO, but there simply are no facts alleged . . . that indicate that [the CEO] advanced [the controller's] self-interest as plaintiff theorizes."[36]  *Atallah* follows the approach of *Klein*, but the court in *Atallah* did not grapple with the effect of the director's vote on *Cornerstone*'s action element.  In *BGC II*, the court focused on the lack of individualized allegations against the director after reviewing a full record on summary judgment.[37]  But *BGC II* was not a pleading-stage decision and thus does not inform *Cornerstone*'s pleading-stage requirement.  As noted in the Opinion, *Klein* and *Atallah* provide "soft support" for the Non-Committee Defendants' position, but no more.[38]

---

[32] 2018 WL 6719717 (Del. Ch. Dec. 19, 2018).

[33] 2023 WL 4628774 (Del. Ch. July 19, 2023).

[34] 2021 WL 4271788 (Del. Ch. Sep. 20, 2021) ["*BGC II*"].

[35] *Klein*, 2018 WL 6719717, at *18.

[36] *Id.*

[37] *BGC II,* 2021 WL 4271788, at *10 ("There is nothing implicating [the director] individually.").

[38] *Opinion* at *10.

13. Still, the Non-Committee Defendants are correct to say that there is divergence among trial court decisions on what a plaintiff must plead to satisfy the action element of *Cornerstone.* Thus, Factor (B) supports granting the Application.

14. ***Factor (H)*** asks whether "[r]eview of the interlocutory order may serve considerations of justice."[39] For this point, the Non-Committee Defendants argue that high court intervention could save the seven Defendants the time and expense of further litigation. But that logic is faulty given the circumstances of this action. The claims against the Liberty Defendants will move forward. All Defendants are thus likely to remain involved in this action for discovery purposes, regardless of the outcome on interlocutory appeal. And although Plaintiffs filed the Complaint nearly eighteen months ago, no meaningful discovery has begun. To avoid inefficiencies resulting from piecemeal litigation pending interlocutory appeal, the court would have to stay the underlying litigation. That would delay resolution and prejudice Plaintiffs. Plus, the appeal itself will be costly.

15. So, is a single Rule 42 factor—the split in authority identified by the Non-Committee Defendants—enough to warrant granting the Application? To answer this question, the court resorts to Rule 42's interpretive principle: Interlocutory appeals are exceptional. They disrupt the normal procession of litigation, threaten a piecemeal approach to suits, cause delay, and threaten to exhaust party and judicial resources. Those risks, which are always presented by an interlocutory appeal, are conspicuous here given that the claims will move forward

---

[39] Supr. Ct. R. 42(b)(iii)(H).

8

against the Liberty Defendants regardless.  These downsides outweigh any benefit to resolving the differences in trial court decisions identified by the Non-Committee Defendants.  The Application is denied.

/s/ Kathaleen St. J. McCormick
Chancellor Kathaleen St. J. McCormick
May 11, 2026

9