**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| RICHARD L. ABBOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **C.A. No. 2019-0194-JRS** |
| | ) | |
| NORTH SHORES BOARD OF | ) | |
| GOVERNORS, INC., BRUCE S. | ) | |
| WILSON, DEBORAH M. DIRECTOR, | ) | |
| HELEN HOART, LOUISA HOLLMAN | ) | |
| and PAUL F. SALDITT, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

1.      Plaintiff, Richard L. Abbott ("Abbott"), bought a home in the private, beachfront residential community of North Shores in 2013.[1]  Upon purchasing his home, he became a member of Defendant, North Shores Board of Governors, Inc. ("NSBG"), a Delaware not-for-profit corporation that represents the North Shores homeowners.[2]  The individual Defendants, Bruce S. Wilson, Deborah M. Director, Helen Hoart, Louisa Hollman and Paul F. Salditt, are the members of the board of directors (the "Board") of NSBG.[3]

---

[1] All citations to the Amended Verified Complaint are to "Compl. __."  Compl. ¶ 1.

[2] Compl. ¶ 9.

[3] Compl. ¶¶ 3–7.

2.     NSBG charges its members annual assessments to pay for, among other services, police protection, the upkeep and operation of common areas and maintenance of the community's private beach.[4]   These common areas include a swimming pool, pool house and tennis courts (the "Recreational Facilities").[5] Abbott has paid these annual assessments since he became a NSBG member in 2013.[6]   In 2016, the NSBG Directors imposed a special assessment on NSBG members to fund improvements to the North Shore beach dunes (the "Dune Project").[7]  Abbott has refused to pay this special assessment.[8]

3.     Abbott brought this suit in 2019 alleging the NSBG has no authority under the governing North Shores Covenants (the "Covenants") to charge assessments or expend funds for maintenance of any of the Recreational Facilities.[9] He also alleges the special assessment for the Dune Project is *ultra vires*.[10]  Abbott's Complaint comprises three counts: Count I is a direct claim against all Defendants

---

[4] Compl. ¶ 11.

[5] *Id.*

[6] Compl. ¶ 10.

[7] Compl. ¶ 12.

[8] *Id.*  The special assessment is $500 for beachfront property owners and $250 for all other property owners.  Compl. ¶ 14.

[9] Compl. ¶ 18.

[10] Compl. ¶ 39.

2

for breach of fiduciary duty and breach of the Covenants for imposing the disputed assessments and invalidly expending funds for maintaining the Recreational Facilities and paying for the Dune Project;[11] Count II is a request for a declaratory judgment that the Covenants do not permit the NSBG to make assessments and expend funds for upkeep of the Recreational Facilities or payment for the Dune Project;[12] and Count III is a derivative claim for breach of fiduciary duty against the NSBG Directors for imposing the disputed assessments and expending the assessed funds on the Recreational Facilities and the Dune Project.[13]

4.      Defendants have moved to dismiss the Complaint under Court of Chancery Rule 12(b)(6) and Rule 23.1.[14] They proffer five arguments, each of which they say mandates dismissal: (1) Plaintiff's claims are time barred under the doctrine of laches; (2) the clear language of the Covenants and the NSBG Certificate of Incorporation (the "Charter") permit the disputed assessments; (3) Plaintiff has failed adequately to plead demand futility under Court of Chancery Rule 23.1; (4) 10 *Del. C.* § 8133 immunizes members of the Board from claims for damages; and (5) Plaintiff has not rebutted the presumptions of the business judgment rule

---

[11] Compl. ¶¶ 38–42.

[12] Compl. ¶¶ 43–45.

[13] Compl. ¶¶ 46–48.

[14] D.I. 36.

3

with respect to his breach of fiduciary duty claims.[15]  As I find all of Plaintiff's claims are either time barred or contradicted by the clear language of the NSBG's governing documents, Defendants' Motion to Dismiss must be GRANTED.

5.    The standard for deciding a motion to dismiss under Court of Chancery Rule 12(b)(6) is well settled:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[16]

On a motion to dismiss, this court may consider documents incorporated by reference or integral to the Complaint.[17]

**A. All Claims Contesting the Annual Assessments are Barred by Laches**

6.    "Laches is an equitable defense born from the longstanding maxim 'equity aids the vigilant, not those who slumber on their rights.'"[18]  Although the Court of Chancery, as a court of equity, is not bound by statutes of limitations, when

---

[15] Opening Br. in Supp. of Mot. to Dismiss Pl.'s Verified Compl. ("OB") 16–38.

[16] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (citation omitted).

[17] *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 (Del. 2004) (noting that on a motion to dismiss, the Court may consider documents that are "incorporated by reference" or "integral" to the complaint).

[18] *Reid v. Spazio*, 970 A.2d 176, 182 (Del. 2009).

4

reviewing a laches defense, the court will give "great weight" to an analogous statute of limitations when assessing the timeliness of a claim.[19] Indeed, "[i]n this court, a party's failure to file within the analogous statute of limitations is, absent a tolling of the limitations period, typically conclusive evidence of laches."[20]

7. The parties agree that the three-year limitations period provided by 10 *Del. C.* § 8106 would apply to Abbott's claims by analogy.[21] As Abbott admits to paying the NSBG annual assessments since he purchased his property in 2013, and admits that NSBG has openly used those assessments to fund maintenance of the Recreational Facilities each year, his claim that Defendants breached the covenants or breached fiduciary duties by maintaining the Recreational Facilities should have been brought long before 2019, absent some unusual circumstance or equitable tolling.[22]

8. Abbott argues each annual assessment, and wrongful use of funds, constitutes a separate claim for accrual purposes, meaning the claims based on

---

[19] *Whittington v. Dragon Gp., L.L.C.*, 991 A.2d 1, 9 (Del. 2009).

[20] *CHC Inv., LLC v. FirstSun Cap. Bancorp,* C.A. No. 2018-0353-KSJM, McCormick, V.C., Mem. Op. at 8 (Del. Ch. Mar. 23, 2020) (citations omitted).

[21] OB 17; Pl.'s Answering Br. in Opp'n to Defs.' Mot. to Dismiss ("AB") 12–15.

[22] Compl. ¶¶ 10–11; *Whittington*, 991 A.2d at 9.

assessments from 2016 until the Complaint was filed in 2019 are timely.[23] Separately, he argues equitable tolling applies because, prior to 2017, he assumed the NSBG's assessments and use of funds were the result of good faith decisions by its Board members.[24]

9.    Abbott was, at the very least, on constructive notice of the Covenants when he purchased his property in 2013.[25]  His cause of action accrued, therefore, in 2013 when he first paid the annual assessments he now alleges were used in violation of the Covenants.[26]  There is no basis to treat the annual assessments (and associated expenditures) imposed after 2016 differently from those Abbott paid from 2013–2015.[27]  And, equitable tolling is likewise inapplicable.  While Abbott correctly

---

[23] AB 14.

[24] *Id.*

[25] *Mendenhall Village Single Homes Ass'n v. Harrington*, 1993 WL 257377, at *3 (Del. Ch. June 16, 1993).

[26] *See Wal-Mart*, 860 A.2d at 319 ("This Court has repeatedly held that a cause of action 'accrues' under Section 8106 at the time of the wrongful act, even if the plaintiff is ignorant of the cause of action.").

[27] To the extent Abbott is attempting to invoke the continuous breach doctrine, the doctrine does not fit here.  To determine whether a breach (or series of breaches) is "continuing," Delaware courts consider whether the breaches can be divided such that the "plaintiff could have alleged a *prima facie* case for breach of contract . . . after a single incident." *Price v. Wilm. Trust Co.*, 1995 WL 317017, at *2–3 (Del. Ch. May 19, 1995).  If so, our courts have determined the "continuing breach" doctrine does not apply even when confronted with "numerous wrongs of similar, if not the same, character over an extended period." *Id*. at *3 (quoting *Ewing v. Beck*, 520 A.2d 653, 662 (Del. 1987)).  Abbott could have pled his claims relating to the improper use of annual assessments after he received the first

6

recites the legal principle that a statute of limitations is tolled when the plaintiff "reasonably relies on the competence and good faith of a fiduciary," he ignores the well-settled precedent that a statute is only tolled until the plaintiff "discovers, or by exercising reasonable diligence should have discovered, his injury."[28] This discovery occurred no later than when Abbott paid his first annual assessment in 2013, and observed that the NSBG was expending funds to maintain the Recreational Facilities. Accordingly, laches bars all claims contesting the validity of the annual assessments.

## B. All Claims Contesting the Dune Project are Barred by the Clear Language of the Covenants and the Charter

10. At the motion to dismiss stage, the Court may address legal issues surrounding the "proper interpretation of language in a contract . . . [w]hen the language of [the] contract is plain and unambiguous."[29] And the court will grant a motion to dismiss a breach of contract claim when the Defendants offer the only

---

such assessment in 2013 and witnesses the open and obvious use of those funds. The continuous breach doctrine, therefore, does not apply.

[28] *Weiss v. Swanson*, 948 A.2d 433, 451 (Del. Ch. 2008); *Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL 1594085, at *19 (Del. Ch. June 29, 2005).

[29] *Allied Capital Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006).

reasonable interpretation of the contract as a matter of law, and that interpretation reveals that no breach has occurred.[30]

11. Abbott argues his claim disputing the validity of the special assessment as a means to fund the Dune Project cannot be barred by laches, as he brought this claim within three years of the assessment.[31] Even assuming, *arguendo*, that the special assessment can be separated from the annual assessments for accrual purposes, a doubtful proposition, Abbott's special assessment claims (and his annual assessment claims) still must be dismissed because they are not supported by the contracts upon which he rests the claims.

12. The Covenants unambiguously permit both the contested annual assessments and the assessment for the Dune Project. They provide that the Board of Governors shall be responsible for a broad range of duties, including:

> [m]aintenance, repair and replacement of the common elements, streets and facilities of the project such as, *but not limited to*, the construction and maintenance of jetties, groins, bulkheads, traffic control, signs, road entrance structures, landscaping, police protection, road maintenance, street lighting and *other such duties as would ordinarily provided and maintained by an attractive development such as North Shores and together with the power to levy assessments to cover the expenditures* and all other charges incurred by the Board of Governors in carrying out their duties hereunder.[32]

---

[30] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 615 (Del. 2003).

[31] AB 13; Oral Arg. on Defs.' Mot. to Dismiss the Verified Am. Compl. ("OA") 29.

[32] OB Ex. C. (the "Covenants") ¶ 20(e)(1) (emphasis added). Abbott argues that, as the Covenants were not attached to the Complaint, this Court cannot refer to them when adjudicating this Motion to Dismiss and must only consider the cherry picked language

Nothing in the Covenants limits the NSBG's right to charge assessments and expend funds to "maintain[] a limited scope of common facilities such as the private roads and appurtenant drainage improvements," as Abbott claims.[33]

13.    Abbott next argues that, because the Recreational Facilities and dunes at issue were not constructed or developed until after the Covenants were adopted in 1972, and the Covenants do not authorize "construction," assessments and expenditures for the Recreational Facilities and Dune Project are *ultra vires*."[34]  The issue he presents in his Complaint, however, is not whether the *construction* of the Recreational Facilities (or development of the dunes) is permitted by the Covenants, but whether the *maintenance* of these community resources is authorized.[35] Regardless of whether the Covenants authorized the construction or development of

from the Covenants he elected to recite in his Complaint.  AB 15–16.  Not so.  It is black letter law that this Court may consider documents "incorporated by reference" or "integral" to a Complaint.  *Wal-Mart*, 860 A.2d at 320.  Not only is the Complaint littered with references to the Covenants, it asserts a breach of those very Covenants.  Compl. ¶¶ 38–42.  Abbott cannot plead a breach of covenants and then prevent the Court from viewing *the very covenants alleged to have been breached*.

[33] Compl. ¶ 18.

[34] AB 18–19; OA 38.

[35] No Defendant is alleged to have participated in the construction of these facilities. Moreover, the time to challenge that act—the authorization for construction—has long passed.

9

the Recreational Facilities or dunes, once built and developed, respectively, there is a clear duty to maintain and repair them.[36]

14. Additionally, the NSBG Charter provides authority for the disputed assessments and expenditures.[37] The Charter permits the NSBG Board of Directors to "fix the rate of the annual charges or assessments."[38] The Charter further provides that the NSBG Board may "expend the monies collected by the [NSBG] from the assessment or charges and other sums received, for the payment and discharge of all proper costs, expenses and obligations incurred in carrying out any or all of the

---

[36] Covenants ¶ 20(e)(1).

[37] OB Ex. D. (the "Charter"). Abbott again questions how far afield from the Complaint the Court may go when deciding the Motion, this time arguing the Court cannot consider the Charter because it is not attached to or referenced by the Complaint. AB 20–21. A corporation's charter provides the framework for the action of its directors. And directors are entitled to expect that their conduct will be measured against the provisions of the charter. *See In re Cornerstone Therapeutics Inc. S'holder Litig.*, 115 A.3d 1173, 1185 (Del. 2015) (holding that a court must consider an 8 *Del. C.* § 102(b)(7) charter provision on a motion to dismiss). Since judging whether the directors here committed *ultra vires* acts requires assessing whether the Charter permits those acts, I take judicial notice of NSBG's Charter. *See McMillan v. Intercargo Corp.*, 768 A.2d 492, 501 n.40 (Del. Ch. 2000) (taking judicial notice of a corporation's certificate of incorporation); *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 170 (Del. 2006) (holding this court may take judicial notice of documents "not subject to reasonable dispute").

[38] Charter § 6(e)(9).

10

purposes for which the [NSBG] is formed."[39]  This provides unambiguous authority for the disputed assessments.[40]

15.    Abbott argues the Dune Project must be reviewed differently than the assessments and expenditures for the Recreational Facilities because there is no general authority to assess for dune construction, and that project benefits some homeowners more than others.[41]  Yet, the power to assess and expend to improve the community's beach is also unambiguously provided in the same Covenants and Charter that allow the other contested assessments.[42]

16.    Because the doctrine of laches and the unambiguous language of the Covenants and the Charter mandate dismissal of each of Abbott's claims under Rule 12(b)(6), there is no need to address Defendants' other arguments.

---

[39] Charter § 6(e)(10).  The Corporation's purpose is to "engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of Delaware . . . ."  Charter § 2.

[40] Other sections of the Charter specifically empower the NSBG to "operate and maintain and keep in repair all common facilities," including recreational facilities, and "improve, provide for, beautify and maintain recreational areas and community facilities . . . ."  Charter §§ 6(e)(5)–(6).

[41] OA 51–52.

[42] Covenants ¶ 20(e)(1); Charter §§ 6(e)(1), (5)–(6), (9)–(10).

17.     For the foregoing reasons, Defendants' Motion to Dismiss must be GRANTED.

**IT IS SO ORDERED.**

_Joseph R. Slights III_
Vice Chancellor

Dated:  March 27, 2020