# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JENNIFER AUGUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2020-0834-BWD |
| | ) | |
| THE GLADE PROPERTY OWNERS | ) | |
| ASSOCIATION, INC., THE BOARD OF | ) | |
| DIRECTORS AND OFFICERS OF THE | ) | |
| GLADE PROPERTY OWNERS | ) | |
| ASSOCIATION, INC., 2018-2019, 2019-2020 | ) | |
| AND 2020-2021, and SEASCAPE PROPERTY | ) | |
| MANAGEMENT, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MASTER'S FINAL REPORT

Final Report: May 11, 2023
Date Submitted: February 28, 2023

Jennifer August, Rehoboth Beach, Delaware; *Plaintiff*.

Aaron Moore, MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN, P.C., Wilmington, Delaware; *Attorneys for Defendants*.

**DAVID, M.**

This final report, a follow up to my May 1, 2023 final report (the "May 1 Final Report"), resolves Plaintiff's and Defendants' competing motions for summary judgment (together, the "Motions") on Counts II and III of Plaintiff's Verified Complaint (the "Complaint"). Through this action, Plaintiff Jennifer August—a homeowner in the Holland Glade community in Rehoboth Beach, Delaware—has asserted numerous grievances against her homeowners association, The Glade Property Owners Association, Inc. (the "Association"), and its property manager, SeaScape Property Management, Inc. ("SeaScape").

As explained below, I recommend that Plaintiff's motion for summary judgment be denied, and Defendants' motion for summary judgment be granted in part and denied in part, as to Counts II and III.

## I.    BACKGROUND

The following facts are drawn from documents that the parties submitted in support of their Motions. I refer the reader to the May 1 Final Report for additional background.

### A. The Community, the Association, and the Governing Documents

Plaintiff Jennifer August is a homeowner in the Holland Glade community located in Rehoboth Beach, Delaware (the "Community"), a common interest community as defined in the Delaware Uniform Common Interest Ownership Act ("DUCIOA"). 25 *Del. C.* § 81-116. Because it was established before the DUCIOA

1

was enacted, the Community is considered a "preexisting" community under the act. 25 *Del. C.* § 81-119. The Community is maintained by the Association, a Delaware nonprofit, nonstock corporation governed by a Declaration of Covenants and Restrictions ("Declaration"), a certificate of incorporation ("Certificate"), and corporate bylaws ("Bylaws," and with the Declaration and Certificate, the "Governing Documents"). *See* May 1 Final Report at 4-7.

## B. SeaScape

The Association has engaged SeaScape to act as property manager of the Community. As described in its management agreement with the Association,[1] SeaScape has "the authority and powers required to perform" various management services on behalf of the Association, including maintaining common areas such as the pool, clubhouse, grounds and athletic facilities. Pl.'s Omnibus Mot. for Declaratory J. and Summ. J. on Counts I, II and III Under Chancery Ct. R. 56(a), 56(c) and 57 [hereinafter, "Pl.'s Mot."], Ex. 5 at 2 [hereinafter, "SeaScape Agreement"], Dkt. No. 137. SeaScape also responds "to unit Owners' concerns, complaints and violations in accordance with" the Governing Documents, and corresponds with homeowners "with respect to rules, regulations, community

---

[1] The parties have not submitted the Association's agreement with SeaScape in effect during the time period covered in the Complaint, but have submitted a later management agreement for the period January 1, 2022 through December 31, 2027. SeaScape Agreement at 1.

information and notices as may be promulgated by the Board or committees of the Association." *Id.* at 9.

In addition, SeaScape notifies owners of the Association's annual meeting, prepares agendas for meetings of the board of directors (the "Board"), and acts as custodian for meeting materials and records (but does not take minutes). *Id.* at 10. SeaScape's President, Chris Nichols, attends meetings of the Board, which members are permitted to attend as well. Plaintiff's pleading references altercations between Nichols and Plaintiff, including one meeting during which Nichols falsely claimed Plaintiff tried to hit him with a door and that he was "being assaulted," and another encounter when Nichols laughed at Plaintiff as she reviewed the Association's books and records. Verified Compl. to Set Aside the Am. Covenant Restrictions 12.2.1; to Recover and Distribute Assets; for Repairs and Maintenance Under the Deed; and for Other Equitable Relief ¶¶ 73-75, 91, Dkt. No. 1 [hereinafter, "Compl."].

SeaScape also provides financial management services to the Association, such as maintaining accounting records and generating financial reports; maintaining and reconciling pretty cash, checking, savings, and reserve bank accounts; assisting in preparing the Association's annual operating budget; providing information to assist the Association's accountants in preparation of audits; maintaining the Association's books and records; and making required disbursements from the Association's accounts as authorized by the Board.

3

SeaScape Agreement at 7. Nichols is not an individual signer on any Association bank account, but he is a signatory with two Board members on one petty cash account. Pl. Jennifer August's Omnibus Opening Br. in Supp. of her Mot. for Declaratory J. and Summ. J. Directed to Def. [hereinafter, "POB"], Ex. A, Dkt. No. 136 (Def.'s Resp. to Pl.'s Second Set of Interrog. Directed to Def. No. 14). Additionally, for Members who elect to pay their dues to the Community through Automatic Clearinghouse Network, "payments are transferred from [the] member's bank accounts to a SeaScape[] holding account," and twice per month, funds are transferred from SeaScape's holding account to the Association's account at the same bank. Pl.'s Mot., Ex. 7 ¶ 5.

### C. Stormwater Management

Since at least July 2018, Plaintiff has raised concerns with the Board about water runoff on her property and within the Community. Those concerns include drainage problems with swales on either side of her property; flooding on her property due to a broken pond pipe; and other issues with the stormwater management systems in the Community. Compl. ¶¶ 29, 101.

At a July 16, 2018 Board meeting, Plaintiff raised issues concerning water runoff and was informed of plans for new landscaping at the entrance of the Community "in fall this year," as well as a "road repaving project," anticipated to begin in 2019, that could improve drainage by altering the pitch of the road. Pl.'s

Reply Br. in Supp. of Pl.'s Mot. for Summ. J. [hereinafter, "PRB"], Ex. 33, Dkt. No. 143. Nichols indicated that he would engage a third party, LH Excavating, Inc., to "review the water flow and make an on s[ite] investigation with the goal of presenting a remedy for the flooding drainage on [Plaintiff's] property." *Id.* SeaScape received a proposal from LH Excavating, Inc. to re-grade a swale on August 15, 2018. *Id.*, Ex. 34.

At a November 30, 2018 Board meeting, Plaintiff again raised the drainage issue and was told that "as part of the road repaving, the engineer consultant w[ould] look at the issue and make recommendations as to drainage and swale" since "the ponds, the roads, and the drainage are all interlinked." *Id.*, Ex. 30. Around the same time or shortly thereafter, SeaScape engaged Double "E" Lawn Care, Inc. to install a drainage system at the Community entrance to "temporar[ily] fix standing water issues." *Id.*, Ex. 34.

On April 4, 2019, Plaintiff sent the Association an "Internal Dispute Resolution" document making numerous demands of the Association, including that the Community install "an enclosed storm pipe" to direct water away from Plaintiff's property; remove "dry wells" and "return the subject swale to an elevation matching the 'un-dredged' swale on the opposite side of" Plaintiff's property; and develop a "Stormwater Management Program." Compl., Ex. 5, at 79-81.

On December 23, 2019, third party Envirotech Environmental Consulting, Inc. ("Envirotech") provided the Association with a "Stormwater Management System Certified Construction Review Self-Assessment," which concluded that "[t]he Stormwater Management System appears to be structurally and functionally sound," although "multitudes of minor deficiencies were observed and documented." Opening Br. in Supp. of Def.'s Mot. for Summ. J. [hereinafter, "DOB"], Ex. D, Dkt. No. 135.

### D. Road Repaving

At Board meetings throughout 2018, the Board discussed a project to repave the roads in the community, to begin in 2019. PRB, Ex. 33. That project was spearheaded by a "Road Replacement Committee." *Id.*

In or around October 2019, the Road Replacement Committee began to receive bids from contractors. *See* Jennifer August's Reply in Supp. of Pl.'s Mot. to Suppl. the Compl., Ex. 8, Dkt. No. 108. Plaintiff alleges that at a September 18, 2020 Board meeting, the Association reported that the project would cost $650,000. Compl. ¶ 26. She contends that the project should have commenced already, and that the Association has improperly proposed a special assessment to fund the project, despite having sufficient funds in its Repair Fund and Repaving Fund to cover the costs. *Id.* ¶ 4; *id.*, Ex. 16. She also requests that an electrical box on her property be relocated "when the road project occurs." *Id.* ¶ 109.

### E. Drugs on Lot 1, a Slippery Pool Deck, and an Insect-Infested Fence

Plaintiff also raises concerns about illicit activity occurring on "Lot 1," a common space maintained by the Association. According to Plaintiff, Lot 1 has become "a drug park littered, for almost two years with ink pen hit pipes and injection needles." Compl. ¶ 107.[2]

Additionally, Plaintiff alleges that the Association has failed to maintain the Community's "slippery swimming pool deck" or a fence on common property that has become infested by wood-boring insects. *Id.* ¶¶ 9, 102, 136.

## II. ANALYSIS

The parties have cross moved for summary judgment. Summary judgment will be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Ct. Ch. R. 56(c). "When the Court is faced with cross-motions for summary judgment the same standard must be applied to each of the parties' motions and the mere existence of cross-motions does not necessarily indicate that summary judgment is appropriate for one of the parties." *Baring v. Condrell*, 2004 WL 2340047, at *3 (Del. Ch. Oct. 18, 2004). "While summary judgment can be useful to isolate issues that need to be tried at trial, it is improper to grant summary judgment when 'upon an examination of all the facts, it

---

[2] Plaintiff also has complained of bamboo overgrowth in her yard, but concedes that issue has been addressed. Compl. ¶¶ 47, 108; Pl.'s Mot. ¶ 33.

seems desirable to inquire thoroughly into them in order to clarify application of the law to the circumstances.'" *Fitzgerald v. Cantor*, 1999 WL 253215, at *1 (Del. Ch. Mar. 31, 1999).

Rather than analyze Plaintiff's claims as presented in the pleadings,[3] in the interests of organization and efficiency, the following analysis considers: (1) claims against the Board as a whole; (2) claims against the Association for breach of fiduciary duty; (3) claims against the Association for violation of the DUCIOA and the Governing Documents; (4) claims against SeaScape; (5) a claim to compel an annual meeting; and (6) miscellaneous torts referenced in Plaintiff's papers.[4]

### A. Claims Against the Board

The Complaint purports to assert claims against "The Board of Directors and Officers of the Glade Property Owners Association, Inc., 2018-2019; 2019-2020 and

---

[3] Count II of the Complaint is labeled "Defendants' Breach of Contract; Breach of Duty of Loyalty; Breach of Fiduciary Duty; Gross Negligence and Abdication as to the POA Operations, POA Management and Upkeep of the Property; Failure to Make Prompt Repairs for or to Remedy Acknowledged Damage; Failure to Clear Title to and Preserve the Subdivision Plot, Assets, Private Use and Privacy." Count III of the Complaint is labeled "The Defendants' Acts and Omissions Constitute Malice, Actual Fraud, Constructive Fraud, Tortious Inference with Plaintiff's Property and Personal Rights, Hindrance, Delay, Duress, Discrimination, Hostile Environment Discrimination, and Conspiracy to Damage and Defraud Plaintiff."

[4] The following analysis does not address arguments raised in briefing that do not relate to allegations in the Complaint (including events occurring after the Complaint was filed). *See, e.g.*, Pl.'s Mot. ¶¶ 48-50; Pl.'s Answering Br. in Opp'n to Def.'s Mot. for Summ. J. at 14, Dkt. No. 140. Similarly, while Plaintiff's briefing raises purported discovery misconduct that was already addressed through prior motions, those arguments are not addressed here. *See, e.g.*, Pl.'s Mot. ¶ 43.

2020-2021." Despite alleging that unspecified members of the Board have breached their fiduciary duties, Plaintiff has not named any individual director or officer of the Association as a defendant in this action.

A board of directors is not a legal entity that can be sued separate and apart from the corporation. *See* 19 Am. Jur. 2d Corporations § 1848 ("A corporate board of directors is not a legal entity separate and apart from the corporation itself . . . ."); 19 C.J.S. Corporations § 539 ("A corporation's board of directors is not a legal entity separate and apart from the corporation itself."). Plaintiff contends, however, that Section 81-325 of the DUCIOA permits her to sue the Board as a whole. That section provides that "[a] person may bring suit against the association or the executive board as a whole in any cause by service in accordance with the otherwise applicable rules authorizing service on the form of legal entity of the association." 25 *Del. C.* § 81-325.

This argument is misplaced. Section 81-325 is not an "Enumerated Provision" applicable to pre-existing communities, like the Community here. *See* 25 *Del. C.* § 81-119; *see also* May 1 Final Report at 18-19 ("When does the DUCIOA apply?"). Even if Section 81-325 applied,[5] the statute confirms that

---

[5] Section 81-325 provides that "[a] person may bring suit against . . . the executive board"— in other words, the *current* Board. Here, Plaintiff seeks liability against the Board as it was previously constituted in 2018 through 2021. The statute is inapplicable for this reason as well.

service may be accomplished "in accordance with the otherwise applicable rules authorizing service on the form of legal entity of the association"—for a Delaware corporation like the Association, in accordance with 10 *Del. C.* § 3111. It does *not* authorize a plaintiff to seek *personal liability* against individuals who have not been named in a complaint and served with process.[6]

In short, because Plaintiff has not named any individual director or officer as a Defendant in this action, her claims against the "Board" for breach of fiduciary duty must be dismissed.

### B. Claims Against the Association for Breach of Fiduciary Duty

Plaintiff's claims for breach of fiduciary duty against the Association also miss the mark because the Association does not owe fiduciary duties. Fiduciary duties are owed to, not by, the corporation. *See, e.g.*, *In re Solera Ins. Coverage Appeals*, 240 A.3d 1121, 1135 (Del. 2020) ("the corporation itself does not owe fiduciary duties"); *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 678 A.2d 533, 539 (Del. 1996) ("Fiduciary duties are owed *by the directors and officers* to the corporation and its stockholders.") (emphasis added); *Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992) ("The only defendant is the corporate entity . . . so there are no fiduciary duty claims.").

---

[6] *Cf. In re Cornerstone Therapeutics Inc., S'holder Litig.*, 115 A.3d 1173, 1182 (Del. 2015) ("[E]ach director has a right to be considered individually when the directors face claims for damages in a suit challenging board action.").

Because the Complaint does not state claims for breach of fiduciary duty against the Association, I do not reach Defendants' argument that, if it did, such claims would be derivative.

### C. Claims Against the Association for Violating the DUCIOA and Governing Documents

Plaintiff also asserts claims premised on purported violations of the DUCIOA and the Governing Documents, alleging that the Association has (1) failed to maintain Community property; (2) improperly managed the Association's finances; (3) improperly delegated responsibilities to Committees of the Board; and (4) violated procedures governing Board meetings.

Section 81-417 of the DUCIOA, which is an Enumerated Provision, provides that "[i]f a declarant or any other person subject to this chapter fails to comply with any of its provisions or any provision of the declaration or bylaws, any person or class of persons adversely affected by the failure to comply has a claim for appropriate relief." 25 *Del. C.* § 81-417. Therefore, whether Plaintiff has standing to bring each of her challenges depends on if she is a "person . . . adversely affected by the [Association's] failure to comply" with the legal requirements she has identified.

### 1. Failure to Maintain Common Property

Plaintiff contends that the Association has failed to maintain the common property by addressing water runoff on her property and in the Community; repaving

11

the roads in the Community; and maintaining Lot 1, the pool deck, and the fence on common property. Defendants respond that Plaintiff lacks standing to bring these challenges because she is not "adversely affected" by the violations she seeks to challenge.

The Declaration provides that "[t]he Association shall be responsible for the management, maintenance and operation of the Common Property and the Association Property . . . ." Compl., Ex. 2 at Section 4.1, Dkt. No. 1 [hereinafter, "Declaration"] . The Declaration further provides that:

> The Association . . . shall . . . be responsible for the maintenance and repair of the Association Property and the Common Property . . . . Specifically, the property the Association shall maintain and be responsible for shall include, but not be limited to the following: . . .
>
> 4.3.3 All Streets within The Glade which are dedicated to the Association on any plat of any portion of the Property.
>
> 4.3.4 All landscaping of the Common Property and Association Property, including, without limitation, all sodding, irrigation, and the planting and care of trees and shrubbery.

Declaration at Section 4.3.

While it appears that the Association has taken steps over a period of years to improve stormwater management and roads within the Community, I cannot conclude on the current record that all the maintenance concerns Plaintiff has raised have been adequately addressed, or that the actions the Association has taken were sufficient to fulfill its maintenance obligations. Nor can I decide, on the record

12

before me, whether Plaintiff is "adversely affected" by the maintenance issues she seeks to challenge. I therefore recommend "deny[ing] summary judgment and proceed[ing] to a trial" on Plaintiff's claims that the Association has failed to maintain the common property. *Hague v. Bay Landing POA, Inc*., 2023 WL 2947453, at *4 (Del. Ch. Apr. 14, 2023); *see also In re El Paso Pipeline Partners, L.P. Derivative Litig*., 2014 WL 2768782, at *8 (Del. Ch. June 12, 2014) ("[T]he court may, in its discretion, deny summary judgment if it decides upon a preliminary examination of the facts presented that it is desirable to inquire into and develop the facts more thoroughly at trial in order to clarify the law or its application.").

### 2. Association Finances

Plaintiff claims that the Association has violated the DUCIOA and Governing Documents in managing the Association's finances by (1) failing to audit the Association's financial records; (2) improperly delegating financial responsibilities to SeaScape; and (3) failing to return common surplus funds, and failing to utilize or return reserve funds, to the Members.

First, Plaintiff alleges that the Association has failed to engage an independent auditor to prepare an audit of the Association's finances. Compl. ¶¶ 4, 32, 137. In support of this argument, Plaintiff cites Section 81-306(a) of the DUCIOA, which states that:

> The bylaws of the association must provide for . . . (6) *For an association for a condominium or cooperative with more than 50 unit*

13

*owners*, an independent audit by a licensed certified public accounting firm of the financial records of the association to be performed no less frequently than once every 3 years and for each intervening year a review (instead of a full audit) by an independent accountant which need not be conducted by a certified public accounting firm . . . .

25 *Del. C.* § 81-306(a) (emphasis added). Because the Association is not "an association for a condominium or cooperative," this provision does not apply. Plaintiff also cites Section 81-318(a)(4)(3) of the DUCIOA, which provides that "the association shall keep a copy of the following records at its principal office: . . . (3) any financial statements and tax returns of the association prepared for the past 3 years, together with the report of the auditors of the financial records . . . ." 25 *Del. C.* § 81-318(a)(4)(3). Although that statute requires an association to maintain copies of "any" financial statements, tax returns, and auditor reports, it does not affirmatively require associations for common interest communities other than condominiums or cooperatives to perform audits. Accordingly, Plaintiff's motion for summary judgment should be denied, and Defendants' motion for summary judgment should be granted, on this issue.

Second, Plaintiff contends that the Bylaws vest the Association's treasurer— *not* its property manager—with the responsibility to manage the Association's finances. Compl. ¶¶ 110-11. The Declaration expressly authorizes the Association to engage a property manager to assist with the Board's management responsibilities:

14

The Association is authorized to and shall, either by virtue of the *appointment of a real estate management agent*, or through its own personnel, be responsible for the maintenance and repair of the Association Property and the Common Property . . . .

The Board of Directors may hire such employees, including, but not limited to: *property managers*, attorneys, accountants, *bookkeepers*, clubhouse personnel, gardeners, and laborers, as the Board may deem necessary in order to maintain the Association and common Property.

Declaration at Section 4.3 (emphasis added). But, as Plaintiff points out, the Bylaws require that:

*The Treasurer shall have custody of the funds and securities of the corporation* and shall keep full and accurate accounts of receipts and disbursements in books belonging to the Corporation and shall deposit all moneys and other valuable effects in the name and to the credit of the Corporation in such depositories as may be designated by the Board of Directors.

Compl., Ex. 3 at Section 14, Dkt. No. 1 [hereinafter, "Bylaws"] (emphasis added).

The manner and extent to which SeaScape exercised control of the Association's finances in the time period at issue in the Complaint, and the level of oversight exercised by the Treasurer and the Board during that period, is not evident on the present record. Indeed, the parties have not even submitted SeaScape's management agreement in effect prior to January 1, 2022. Accordingly, further factual development at trial is needed, and I recommend that the Motions be denied as to this issue. *Hague*, 2023 WL 2947453, at \*4; *In re El Paso Pipeline Partners, L.P. Derivative Litig.*, 2014 WL 2768782, at \*8.

15

Third, Plaintiff challenges the Association's failure "to return common surplus funds and to utilize or return reserve funds." Compl. ¶ 137. Further factual development on this issue is also needed, and I recommend that the Motions be denied in this respect as well.

### 3. Delegation to Committees

Plaintiff challenges "the use of intermediaries, including Glade committees, who have been permitted to write their own 'Charters' and exert practical and management control to abdicate the defendants' official duties." Compl. ¶ 4. According to Plaintiff, "[s]uch Committees have unlawful domain over the Board's work, such as the Finance Committee, the Roads Committee, the Common Grounds Committee, the Landscape Committee, and the Ponds Committee." *Id.* ¶ 35; *see also id.* ¶ 135 (alleging the Board has improperly delegated responsibilities to "Committee members and rogue individuals, to run the internal operations"). By way of example, Plaintiff contends that a Roads Committee was given "unilateral charge of the repaving project." *Id.* ¶ 36. Plaintiff also contends that the committees do not regularly maintain minutes of meetings. *Id.*

Section 21 of the Bylaws authorizes the Board to "establish standing and ad-hoc committees regarding certain community projects, programs or causes for the common good of the entire community." Bylaws at Section 21. The Bylaws require that "[a]ll committees and sub-committees must be formally established by motion

16

and affirmative vote of the Board and the purpose of the committee or subcommittee must be well defined in the Minutes of Board meetings." *Id*. The Bylaws further provide that "[t]he Board of Directors may not delegate official responsibility or authority individually or as a governing body to any committee or committee member . . . ." *Id*. Minutes of committee meetings must be produced within 48 hours of the meeting, and committees may only implement proposals "after written approval by the Board." *Id*.

Although Plaintiff's allegations that the Board has improperly delegated responsibilities to committees are, in some respects, conclusory, I conclude it is desirable to inquire more thoroughly into the facts underlying Plaintiff's specific contention that the Roads Committee was given unilateral authority over the repaving project. In that respect, I recommend that the Motions be denied.

### 4. Board Meeting Procedures

Plaintiff also has identified two purported defects in the Association's Board meeting procedures: (1) the exclusion of Members at executive sessions of the Board; and (2) the failure to timely provide agendas for Board meetings.

First, Plaintiff takes issue with the Board "holding closed Executive Board meetings on any issue with no visible agenda or record." Compl. ¶ 141; *see also* POB at 32. Section 81-308A of the DUCIOA, which is an Enumerated Provision, provides:

[A]ll meetings of the executive board shall be open to the unit owners except for executive sessions held for purposes of: (i) consulting with the association's lawyer regarding, or board discussion of, litigation, mediation, arbitration or administrative proceedings or any contract matters; (ii) labor or personnel matters; (iii) discuss matters relating to contract negotiations, including the review of bids or proposals, if premature general knowledge of those matters would place the association at a disadvantage; or (iv) discussion of any complaint from or alleged violation by a unit owner, when the executive board determines that public knowledge would violate the privacy of the unit owner.

25 *Del. C.* § 81-308A(c). Since the statute expressly authorizes the Board to hold executive sessions, and Plaintiff has failed to identify any specific instance where doing so violated Section 81-308A(c)(i)-(iv), this challenge fails.

Second, Plaintiff alleges that the Board has "fail[ed] to properly notice meeting agendas . . . ." Compl. ¶ 141. Section 81-308A(b) provides:

Except when a schedule of meetings has been distributed to unit owners that identifies the meeting in question or in cases of emergency meetings that may be held without prior notice, the secretary or other officer specified in the bylaws shall cause notice of any regular or special executive board meeting to be delivered to each unit owner by any means described in § 81-127 of this title *not fewer than 10 nor more than 60 days in advance of the meeting* (but not later than the time notice of the meeting is sent to members of the executive board). The *notice must state* the time and place of the meeting and *the items on the agenda*, including an opportunity for unit owners to offer comments to the executive board regarding any matter affecting the common interest community.

25 *Del. C.* § 81-308A(b) (emphasis added). In other words, notice of Board meetings must be provided not fewer than 10 and not more than 60 days in advance of a meeting, and must be accompanied by an agenda. But because Plaintiff has not

identified any specific instances when agendas were not timely provided, this challenge similarly fails.

*     *     *

To summarize, as to Plaintiff's claim against the Association for violations of the DUCIOA and the Governing Documents, I recommend that Plaintiff's motion for summary judgment be denied, and Defendants' motion for summary judgment be granted in part and denied in part.

### D. Claims Against Seascape

Plaintiff brings claims against SeaScape for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and breach of contract.

### 1. Breach of Fiduciary Duty

Plaintiff purports to assert a claim against SeaScape for breach of fiduciary duty.

As a threshold matter, fact issues remain as to whether Seascape owes fiduciary duties to the Association. "A fiduciary relationship arises in a situation where one person reposes special trust in, and reliance on, the judgment of another, or where a special duty exists on the part of one person to protect the interests of another. In contrast, a straightforward, arm's-length commercial relationship arising from contract does not give rise to fiduciary duties." *Forsythe v. ESC Fund Mgmt. Co. (U.S.), Inc.*, 2007 WL 2982247, at *10 (Del. Ch. Oct. 9, 2007) (citations

19

omitted). Delaware courts are reluctant to recognize a "special" nature in relationships, but have recognized such a relationship in limited circumstances involving "express trustees and corporate officers and directors," as well as "general partners; administrators or executors; guardians; and, in special circumstances, joint venturers or principles and their agents." *Metro Ambulance, Inc. v. E. Med. Billing, Inc.*, 1995 WL 409015, at *3 (Del. Ch. July 5, 1995). Here, SeaScape's relationship with the Association is governed by contract, but that is not dispositive; SeaScape's management agreement also makes clear that it is an "agent" acting on behalf of the Association. SeaScape Agreement at 1. Whether SeaScape holds a position of trust sufficient to create fiduciary duties is a question of fact that cannot be revolved at this stage.

Assuming SeaScape owes fiduciary duties to the Association, a claim for breach of duty premised on SeaScape's mismanagement of the Association's finances would be derivative in nature. *See, e.g.*, *Orloff v. Shulman*, 2005 WL 3272355, at *8 (Del. Ch. Nov. 23, 2005) (noting that claims "alleging financial mismanagement that would harm the corporation as a whole" are "derivative in nature under Delaware law"). Plaintiff is not represented by counsel and therefore cannot bring derivative claims on behalf of the Association. *See Kelly v. Fuqi Intern, Inc.*, 2013 WL 135666, at *7 (Del. Ch. Jan. 2, 2013) ("A derivative action may not be brought *pro se*.").

20

Plaintiff also appears to contend that altercations between Plaintiff and Nichols resulted in a breach of duty. *See* Compl. ¶¶ 73-75, 91. SeaScape's fiduciary duties—if any are owed—are owed to the Association, not to Plaintiff individually. *See Klaassen v. Allegro Dev. Corp.*, 2013 WL 5967028, at \*11 (Del. Ch. Nov. 7, 2013) ("[C]orporate directors do not owe fiduciary duties to individual stockholders; they owe fiduciary duties to the entity and to the stockholders as a whole."); *Gilbert v. El Paso Corp.*, 1988 WL 124325, at \*9 (Del. Ch. Nov. 21, 1988) ("[D]irectors' fiduciary duties run to the corporation and to the entire body of shareholders generally, as opposed to specific shareholders . . . ."). Nothing in the record, or even in Plaintiff's pleadings, supports the notion that Nichols acted disloyally to favor his own interests over the interests of the Association or its Members as a whole.

## 2. Aiding and Abetting Breach of Fiduciary Duty

Plaintiff also purports to assert a claim against SeaScape for aiding and abetting breaches of fiduciary duty. "To prevail on a claim for aiding and abetting breach of fiduciary duty, a plaintiff must prove four elements: (i) the existence of a fiduciary relationship, (ii) a breach of the fiduciary's duty, (iii) knowing participation in that breach by the defendants, and (iv) damages proximately caused by the breach." *Cambria Equity Partners L.P. v. Relight Enterprises S.A.*, 2021 WL 2336984, at \*12 (Del. Ch. Jan. 5, 2021). Plaintiff's claim here fails for lack of an underlying fiduciary breach. As noted above, the Association does not owe fiduciary

duties, and the Complaint does not even identify the directors and officers of the Association who allegedly breached their fiduciary duties. Without an underlying breach, the aiding and abetting claim fails. *See, e.g.*, *In re MeadWestvaco S'holders Litig.*, 168 A.3d 675, 688 (Del. Ch. 2017) ("Because plaintiffs have failed to state a claim for breach of a fiduciary duty, their aiding and abetting claim fails for lack of a predicate breach.").

### 3. Breach of Contract

Plaintiff's claim against SeaScape for breach of contract also lacks merit. Plaintiff is not a party to the Association's contract with SeaScape, nor can she pursue a derivative breach of contract claim against SeaScape on behalf of the corporation while appearing *pro se*.[7] *Kelly*, 2013 WL 135666, at *7.

\*       \*       \*

In sum, as to Plaintiff's claims against SeaScape, I recommend that Plaintiff's motion for summary judgment be denied, and Defendants' motion for summary judgment be granted.

### E. Claim to Compel an Annual Meeting

While not entirely clear, it appears Plaintiff also seeks to challenge the Association's failure to hold an annual meeting in 2020. *See* Compl. ¶ 140; POB at

---

[7] Plaintiff also seems to argue that SeaScape breached "contractual promises" made directly to her. *See, e.g.*, PRB at 14 (arguing Nichols "broke [his] promise" that he would "never have anything to do with any election ever again"). Plaintiff has not identified any enforceable contract to which she and any Defendant are parties.

22

30-31. At oral argument, Plaintiff conceded that the Association held annual meetings in 2021 and 2022. Feb. 28, 2023 Oral Arg. Tr. at 86:16-87:13. Accordingly, to the extent the allegations of the Complaint can be construed as seeking to compel an annual meeting,[8] this issue has been mooted.

### F. Other Tort Claims

Finally, the Complaint refers to torts sounding in negligence,[9] fraud,[10] defamation,[11] "tortious interference,"[12] civil conspiracy, harassment, and

---

[8] *See* 8 *Del. C.* § 211(c).

[9] *See, e.g.*, Compl. ¶ 100 (alleging that the Association's failure to maintain swales near Plaintiff's property reflects "discriminatory treatment through targeted negligence"); *id.* ¶ 150 ("Defendant SeaScape Property Mgmt., Inc. has committed gross negligence and fraud by aggravated hostile harassment, lies about plaintiff and the disposition of POA assets.").

[10] Plaintiff's Complaint contains twenty-seven references to fraud, including common law fraud, constructive fraud, fraudulent inducement, fraudulent transfer and consumer fraud. *See* Compl. ¶¶ 4, 22, 42, 49, 76, 137, 143, 148-50. Plaintiff has not alleged, let alone come forward with any evidence supporting, any permutation of fraud claim. She has not identified a false statement or even identified the circumstances in which she believes fraud occurred. *See Tr. Robin, Inc. v. Tissue Analytics, Inc.*, 2022 WL 17423728, at *5 (Del. Ch. Dec. 2, 2022) ("Rule 9(b) requires allegations of fraud to state the relevant circumstances with particularity, while simultaneously allowing the knowledge or intent requirement to be 'averred generally[.]'").

[11] This Court lacks jurisdiction over defamation claims. *See generally Preston Hollow Cap. LLC v. Nuveen LLC*, 216 A.3d 1, 4 (Del. Ch. 2019).

[12] *See* POB at 29 ("[E]ach Defendant, proximally, individually and together, have used the condition of the nearby common property in their control, and their claimed authority, to abuse Plaintiff over many years with the intended purpose or effect to harm, and ultimately damage her and her property.").

racketeering.[13]    These assertions are vague, conclusory, and largely incomprehensible from the Complaint and Plaintiff's briefs.    Accordingly, I recommend that these "claims" be dismissed.[14]

## III.    CONCLUSION

For the reasons explained above, I recommend that Plaintiff's motion for summary judgment be denied, and Defendants' motion for summary judgment be granted in part and denied in part, on Counts II and III of the Complaint.    The claims that survive for adjudication at trial are claims against the Association for violations of the DUCIOA or the Governing Documents premised on (1) the Association's failure to maintain common property; (2) the Board's delegation of authority over the repaving project to the Roads Committee; (3) the Board's delegation of the Association's finances to SeaScape; and (4) the Association's purported failure to return common surplus funds and return reserve funds.

This is a final report.    Exceptions may be taken to this report and/or to the May 1 Final Report within eleven days of the date of this report, in accordance with Court of Chancery Rule 144.

---

[13] To the extent Plaintiff's claims of "harassment and racketeering" relate to her arguments under the federal and state Fair Housing Acts, I refer the parties to the May 1 Final Report.

[14] The Complaint also alleges that the Association shredded 27 boxes of documents in 2020, and that "SeaScape now shreds all financial documents after scanning them . . . ." Compl. ¶ 119.    To the extent those allegations can be construed as alleging a breach of fiduciary duty, such claims are addressed herein.    I also note that Plaintiff has not identified any supposed violation of the Association's record retention policy.    PRB, Ex. 60.