COURT OF CHANCERY
OF THE
STATE OF DELAWARE

KATHALEEN ST. JUDE MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

June 10, 2025

Ned Weinberger
Mark D. Richardson
Brendan W. Sullivan
LABATON KELLER SUCHAROW LLP
222 Delaware Avenue, Suite 1510
Wilmington, DE 19801

Raymond J. DiCamillo
Kevin M. Gallagher
Craig K. Ferrere
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, DE 19801

William M. Lafferty
Ryan D. Stottmann
Alexandra M. Cumings
Louis F. Masi
MORRIS NICHOLS ARSHT
& TUNNELL LLP
1201 N. Market Street, 16th Floor
Wilmington, DE 19801

A. Thompson Bayliss
Eric A. Veres
Caleb R. Volz
Nicholas F. Mastria
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807

> Re: *City of Sarasota Firefighters' Pension Fund v. Inovalon Holdings Inc.,* C.A. No. 2022-0698-KSJM

Dear Counsel:

This letter decision addresses Defendants' supplemental motions to dismiss raised on remand.[1] The motions to dismiss are denied in part and granted in part.

---

[1] *See City of Sarasota Firefighters' Pension Fund v. Inovalon Hldgs., Inc.*, C.A. No. 2022-0698-KSJM (Del. Ch. Aug. 11, 2023) (TRANSCRIPT) (the "Dismissal Decision"), *rev'd and remanded*, 319 A.3d 271 (Del. 2024) (the "Appellate Decision"). Plaintiffs are City of Sarasota Firefighters' Pension Fund, Steamfitters Local 449 Pension Fund, and Steamfitters Local 449 Retirement Security Fund. Defendants were: Inovalon Holdings, Inc.; Keith R. Dunleavy; Meritas Group, Inc.; Meritas Holdings LLC; Dunleavy Foundation; Isaac S. Kohane; Mark A Pulido; Denise K. Fletcher; William D. Green; William J. Teuber; and Lee D. Roberts. Defendants Andre Hoffman, Cape Capital SCSP, and Sicar-Inovalon Sub-Fund were voluntarily dismissed on January 25, 2023. Dkt. 37. Other Defendants were voluntarily dismissed in response to the supplemental motions to dismiss, as discussed below.

## I.     FACTUAL BACKGROUND

The facts are set forth in the Appellate Decision and are otherwise drawn from the Complaint.[2]   By way of summary, Plaintiffs filed this suit challenging the acquisition of Inovalon Holdings, Inc. by a private equity consortium led by Nordic Capital (the "Transaction").   Plaintiffs assert claims for breach of fiduciary duties against the Inovalon Board of Directors, breach of fiduciary duty against the CEO, and unjust enrichment as to certain Defendants that rolled over their equity and one who accepted a post-closing compensation package.[3]   Plaintiffs also claim that the Transaction violated the implied covenant of good faith and fair dealing in Inovalon's Charter, which required a separate class vote on the Transaction, because the stockholder vote was not fully informed.[4]

Defendants moved to dismiss the Complaint, and I granted dismissal under *MFW*[5] in a bench ruling on July 31, 2023.[6]   Because I dismissed the entire Complaint on the grounds that the Transaction complied with *MFW*, I did not reach Defendants' argument that Plaintiffs failed to plead a non-exculpated claim against a group of

---

*See* Dkt. 99.  Terms not defined in this letter decision have the same meaning ascribed to them in the Appellate Decision.

[2] C.A. No. 2022-0698-KSJM, Docket ("Dkt.") 1 ("Compl.").

[3] *Id.* ¶¶ 226–253.

[4] *Id.* ¶¶ 254–259.

[5] *Kahn v. M & F Worldwide Corp.*, 88 A.3d 635 (Del. 2014) ("*MFW*"), *overruled in part on other grounds by Flood v. Synutra Int'l, Inc.*, 195 A.3d 754, 766 n.81 (Del. 2018 (holding that "to the extent that note 14 [in *MFW*] is inconsistent with this decision, *Swomley*, or the Court of Chancery's opinion in *MFW*, it is hereby overruled").

[6] *See Dismissal Decision* at 21–50.

Defendants referred to as the "Committee" or "Committee Defendants."[7]  My holding

under *MFW* eliminated the predicate for Plaintiffs' claim for breach of the Charter's

implied covenant, and so I did not independently evaluate Defendants' Rule 12(b)(6)

arguments as to that claim.

The Delaware Supreme Court reversed and remanded the Dismissal Decision,

holding the stockholder vote approving the Transaction was not fully informed and

therefore did not comply with *MFW*.[8]  The Supreme Court held that Defendants failed

to disclose material information concerning the nature and extent of the Committee's

advisors' conflicts.  In particular, the Proxy Statement failed to disclose: Evercore's

concurrent representation of Nordic and Insight;[9] the amount of fees J.P. Morgan

stood to receive from concurrent representations of the Consortium members;[10] and

the over $400 million in fees J.P. Morgan received from Consortium members during

the previous two years (instead selectively disclosing only $15.2 million in fees

received from Nordic).[11]  The Supreme Court also credited Plaintiffs' allegations that

the Proxy Statement overstated Evercore's role in conducting Transaction-related

---

[7] The Committee comprises Defendants Mark A. Pulido, William D. Green, and William J. Teuber.  *See* Dkt. 17 (Comm.'s Opening Br.) at 61–64; Dkt. 43 (Comm.'s Reply Br.) at 35–36.

[8] *Appellate Decision*, 319 A.3d at 275.

[9] *Id.* at 292–95.

[10] *Id.* at 295–97.

[11] *Id.* at 298–99.

market outreach.[12]   The Supreme Court did not address Plaintiffs' additional arguments on appeal, including that the Transaction violated *MFW*'s *ab initio* requirement.

In their supplemental motions to dismiss filed on remand, Defendants advance two arguments that this court previously did not reach.   The "Individual Defendants"—comprising the Committee Defendants and "Non-Committee Defendants" Isaac S. Kohane, Denise K. Fletcher, and Lee D. Roberts—moved to dismiss the claims against them under *Cornerstone*.[13]   Defendants also moved to dismiss the claim for breach of the Charter.[14]   In response to the Non-Committee Defendants' motion under *Cornerstone*, Plaintiffs dismissed the claims against them.[15]   The parties briefed the other issues and the court heard oral argument on February 7, 2025.[16]

---

[12] *Id.* at 299–304 (noting that the Court "need not 'pile on' another basis for reversal" but cautioning that "the Proxy [] appear[s] to overstate the role that Evercore played in the outreach efforts").

[13] Dkt. 89 ("Comm.'s Supp. Opening Br.") at 4–7 (relying on *In re Cornerstone Therapeutics Inc. S'holder Litig.*, 115 A.3d 1173, 1175–76 (Del. 2015)); Dkt. 90 ("Non-Comm.'s Supp. Opening Br.") at 2–5 (relying on *Cornerstone*, 115 A.3d 1173, 1175–76, 1179–80).

[14] Comm.'s Supp. Opening Br. at 9; Non-Comm.'s Supp. Opening Br. at 8–9.

[15] Dkt. 96 ("Pls.' Ans. Br. to Supp. Mot. to Dismiss") at 1 n.1; Dkt. 99.

[16] Dkts. 131, 132.

## II. LEGAL ANALYSIS

"[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'"[17] When considering such a motion, the court must "accept all well-pleaded factual allegations in the [c]omplaint as true . . . , draw all reasonable inferences in favor of the plaintiff, and deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[18] The court, however, need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[19]

### A. The *Cornerstone* Arguments

The Committee Defendants argue that the claims against them must be dismissed because they are entitled to exculpation. To state a claim against an individual director under *Cornerstone*, "the [c]omplaint must 'plead[ ] facts supporting a rational inference that the director harbored self-interest adverse to the stockholders' interest, acted to advance the self-interest of an interested party from whom they could not be presumed to act independently, or acted in bad faith.'"[20]

---

[17] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 537 (Del. 2011).

[18] *Id.* at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[19] *Price v. E.I. du Pont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011) (citing *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009)).

[20] *See Frederick Hsu Living Tr. v. ODN Hldg. Corp.*, 2017 WL 1437308, at *37 (Del. Ch. Apr. 14, 2017), *as corrected* (Apr. 25, 2017) (quoting *Cornerstone*, 115 A.3d at 1179–80); *see also Tornetta v. Maffei*, C.A. No. 2019-0649-AGB at 23:9–15 (Del. Ch.

Plaintiffs argue that it is reasonably conceivable that the Committee Defendants acted in bad faith. To plead bad faith, a plaintiff can allege facts supporting the inference that a director's conduct was motivated "by an actual intent to do harm, or when there is an intentional dereliction of duty, [or] a conscious disregard for one's responsibilities."[21] To plead bad faith based on disclosure deficiencies, a plaintiff must plead that the defendants intentionally withheld or failed to disclose the material information in conscious disregard of their fiduciary duties.[22]

Plaintiffs argue that it is reasonably conceivable that each of the Committee Defendants acted disloyally in two ways: first, by knowingly failing to disclose their

_____

Feb. 23, 2021) (TRANSCRIPT) ("To state a bad faith claim, a plaintiff must show either an extreme set of facts to establish that disinterested directors were intentionally disregarding their duties or that the decision under attack is so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith.").

[21] *McElrath v. Kalanick*, 224 A.3d 982, 991 (Del. 2020) (quoting *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 64, 66 (Del. 2006)) (internal quotation marks omitted).

[22] *See In re USG Corp. S'holder Litig.*, 2020 WL 5126671, at *26 (Del. Ch. Aug. 31, 2020) ("To plead bad faith based on the nondisclosure of the Board's view of USG's intrinsic value, the Plaintiffs must plead that the Defendant directors intentionally withheld their view of intrinsic value in conscious disregard of their fiduciary duties."), *aff'd sub nom., Anderson v. Leer*, 265 A.3d 995 (Del. 2021); *see also Morrison v. Berry*, 2019 WL 7369431, at *18 (Del. Ch. Dec. 31, 2019) ("Bad faith, in the context of omissions, requires that the omission be intentional and constitute more than an error of judgment or gross negligence[.] The Plaintiff . . . must adequately allege bad faith in the disclosures themselves.").

advisors' conflicts; and, second, by knowingly making false disclosures concerning their advisors' market outreach.[23]

Plaintiffs' first theory rests on the Proxy Statement's failure to disclose Evercore's concurrent representations of Nordic and Insight, J.P. Morgan's concurrent conflicts with Consortium members, and J.P. Morgan's receipt of $400 million in fees from those same counterparties. The Supreme Court found that information material.[24] It is thus material as a matter of law.[25] The Committee Defendants do not dispute it is reasonably conceivable that each were aware of the undisclosed conflict-related information.[26]

The question is whether it is reasonably conceivable that the Committee Defendants acted in bad faith by withholding information concerning the Committee's advisors from the Proxy Statement. As the Appellate Decision held, the material nondisclosures concerning the Committee's advisors were "uniquely

---

[23] Pls.' Ans. Br. to Supp. Mot. to Dismiss at 5–9.

[24] *Appellate Decision*, 319 A.3d at 291–99.

[25] *See generally Cede & Co. v. Technicolor, Inc.*, 884 A.2d 26, 38 (Del. 2005) ("It is well-settled that when an appellate court remands for further proceedings, the trial court must proceed in accordance with the appellate court's mandate as well as the law of the case established on appeal.").

[26] Comm.'s Supp. Opening Br. at 6 (acknowledging that "the Committee received conflicts disclosures from Evercore and JPM"); *Appellate Decision*, 319 A.3d at 293 ("Evercore also disclosed to the Special Committee that it concurrently represented Nordic on a potential unrelated transaction."); *id.* (acknowledging allegation that "Evercore alluded to [its Insight] representation in its August 18, 2021 memorandum").

important considerations for minority stockholders,"[27] and the Proxy Statement "suggests that Evercore was in a better position than it actually was to mitigate any effects of J.P. Morgan's conflicts."[28] Given the significance of this information in the eyes of the high court,[29] it is reasonably conceivable that the Committee Defendants withheld this information to make the process look better.[30]

Defendants argue that the Committee Defendants' disclosure of aspects of the advisors' conflicts undercuts the inference that they failed to disclose other conflicts in bad faith.[31] Yet the Committee Defendants disclosed Evercore's work for the Consortium but failed to disclose J.P. Morgan's Consortium work.[32] That is, information deemed material as to J.P. Morgan was withheld as to Evercore. The implication is that the Committee Defendants recognized this information as material but chose not to disclose it as to Evercore. This supports an inference that the Committee Defendants intentionally withheld material information.

---

[27] *Appellate Decision*, 310 A.3d at 292; *id.* ("[I]t is imperative for the stockholders to be able to understand what factors might influence the financial advisor's analytical efforts . . . ." (quoting *City of Dearborn Police and Fire Revised Ret. Sys. v. Brookfield Asset Mgmt. Inc.*, 314 A.3d 1108, 1132 (Del. 2024) (internal quotation marks omitted)).

[28] *Appellate Decision*, 310 A.3d at 304.

[29] *See id.* at 303–04.

[30] *In re PLX Tech. Inc. S'holders Litig.*, C.A. No. 9880-VCL (Del. Ch. Sept. 3, 2015) (TRANSCRIPT) at 52:19–24 ("[T]he allegation is that the directors knew about this stuff. They approved the projections. They approved prior projections. So if the disclosure claim goes forward . . . [i]t is not a care violation; it is a knowing violation.").

[31] Comm.'s Supp. Opening Br. at 5–7.

[32] Compl. ¶¶ 169–177.

Moreover, according to the Appellate Decision, the total mix of information disclosed regarding the Committee's advisors is problematic for other reasons. As the high court observed, the Proxy Statement suggested Evercore "may" have a material conflict with a transaction counterparty,[33] when the Committee Defendants were aware of Evercore's actual concurrent conflict and overstated its role in the sale process.[34] The Proxy Statement similarly described J.P. Morgan's fees as "customary compensation" without context, which obscured the nature of J.P. Morgan's material relationship with Consortium members from stockholders to mislead them about the significance of its participation in the sale process.[35]

Defendants cite to *Morrison*[36] and *USG*[37] for the proposition that the total mix of disclosed information can undermine an inference that omissions were made in bad faith.[38] In each case, however, the defendants disclosed information altered the total mix of information in a way that belied a finding of bad faith.[39] By contrast, the Proxy

---

[33] *Appellate Decision*, 319 A.3d at 292 ("Evercore may provide financial advisory or other services to the Company and the Acquiror and their respective affiliates, including Nordic Capital X, GIC, Insight and their respective affiliates, in the future, and in connection with any such services Evercore may receive compensation.") (quoting Proxy at 53)).

[34] *See id.* at 294.

[35] *See id.* at 297.

[36] 2019 WL 7369431.

[37] 2020 WL 5126671.

[38] Comm.'s Supp. Opening Br. at 5–6.

[39] *Morrison*, 2019 WL 7369431, at *19–20 (dismissing directors on remand under *Cornerstone* after the Supreme Court ruled that the 14-D9 contained material omissions where "the facts that the 14-D9 does disclose" made it unreasonable "to

Statement contains no countervailing disclosures concerning the Committee advisors' conflicts foreclosing reasonable inferences in Plaintiffs' favor. Rather, as discussed above, the Proxy Statement supports an inference the Committee Defendants intentionally withheld material information concerning Evercore and contains otherwise misleading or incomplete disclosures regarding the advisors.

Plaintiffs' second theory rests on the Supreme Court's observation that the Proxy Statement also materially overstated Evercore's role in market outreach (and in mitigating J.P. Morgan's conflicts) and directly contradicted the Special Committee's meeting minutes.[40] As the Appellate Decision stated, "the Proxy's description of Evercore's role in the market outreach efforts do not sit comfortably with the corresponding accounts set forth in the minutes;"[41] if the "minutes are accurate . . . then the Proxy does appear to overstate the role that Evercore played in the outreach efforts[;]"[42] and "[t]he Proxy's suggestions of a more active role for

---

infer that the 14D-9 represented the knowingly-crafted deceit or knowing indifference to duty that would show bad faith"); *USG*, 2020 WL 5126671, at *27–28 & n.332 (dismissing directors under *Cornerstone* despite material nondisclosures concerning the target company's intrinsic value where the proxy statement also disclosed that the board "discussed the pros and cons of issuing a public statement regarding the Board's view of the intrinsic value, but decided not to issue such a statement," concluding that affirmatively disclosing the board's decision not to disclose that information undermined any finding that the omission was in bad faith).

[40] Compl. ¶ 178.

[41] *Appellate Decision*, 310 A.3d at 304.

[42] *Id.* at 303.

Evercore takes on added significance in a scenario where J.P. Morgan, as the lead advisor, faced conflicts."[43]

It is reasonably conceivable that the Committee Defendants were aware that J.P. Morgan played an outsized role in market outreach and Evercore was sidelined. Each attended the August 11, 12, 13, and 16, 2021 meetings during which the Committee confirmed that J.P. Morgan (not Evercore) was exclusively handling third-party outreach, or directed J.P. Morgan (not Evercore) to continue such outreach.[44] As the Supreme Court highlighted: "The minutes even break-out the market outreach discussion with a separate heading — 'JPM Update.'"[45] The Committee and counsel also updated the full Board on J.P. Morgan's exclusive market outreach, including on August 6 and 17.[46] The contradictions between the minutes and Proxy Statement give rise to the inference that the Committee Defendants intentionally overstated Evercore's involvement.

This court has rejected motions to dismiss complaints alleging similar facts. In *Tornetta v. Maffei*, the plaintiffs alleged that the press release announcing the challenged merger falsely stated that a financial advisor performed merger-related work when it had stopped advising the board well before the merger.[47] Chancellor

---

[43] *Id.* at 304.

[44] Compl. ¶¶ 125–127, 130–133, 135–136, 148, 178.

[45] *Appellate Decision*, 310 A.3d at 303 n.179.

[46] *See* Dkt. 36 (Pls.' January 2023 Omnibus Ans. Br.) at 69.

[47] *Tornetta*, Tr. at 24:16–25:6.

Bouchard rejected the directors' *Cornerstone* defense, inferring bad faith because they attended a meeting where the CFO discussed including the advisor's name in the press release in exchange for a fee reduction.[48]  Similarly here, Plaintiffs allege the Committee Defendants received updates at meetings on the outreach conducted by J.P. Morgan alone, yet chose to overstate Evercore's role in the Proxy Statement.

In *In re Hansen Medical Inc. Shareholders Litigation*, the plaintiffs alleged the proxy was misleading because it disclosed financial projections management considered unrealistic and only included some projections "to keep the CFO from looking stupid."[49]  Then-Vice Chancellor Montgomery-Reeves held they pled a non-exculpated claim against the CFO who prepared the financial projections, inferring bad faith because it was reasonably conceivable he knew management's skepticism of the projections made the proxy materially misleading.[50]  Here, it is reasonably conceivable the Committee Defendants were aware the characterization of Evercore's role was misleading when they prepared the Proxy Statement.

In *Chen v. Howard-Anderson*, Vice Chancellor Laster upheld the plaintiff's disclosure claims on summary judgment because "the record support[ed] an inference that the defendants knew about the disclosure problems before approving the [p]roxy

---

[48] *Id.* at 25:7–26:10.

[49] 2018 WL 3030808, at *10 (Del. Ch. June 18, 2018) (internal quotation marks omitted).

[50] *Id.* at *10–11.

[s]tatement."[51]   There, the directors were in a position to review the disputed description of the merger process, which mischaracterized negotiations and did not accurately describe actions taken by some of the director defendants.[52]  The court can similarly infer bad faith here because the Committee Directors were aware of the true nature of Evercore's participation, which Plaintiffs allege was incorrectly described in the Proxy Statement.[53]

In light of the findings of the Appellate Decision, both of Plaintiffs' stated bases for their claim support an inference that the Committee Defendants omitted the material information in bad faith.

The Committee Defendants also argue, as a matter of atmospherics, that it is unreasonable to infer bad faith because "it took a review by the Supreme Court . . . to clarify that such facts were material."[54]  If the trial court did not view this information

---

[51] 87 A.3d 648, 653 (Del. Ch. 2014).

[52] *Id.* at 692.   As the Committee Defendants observe, the *Chen* defendants' "'questionable conduct' during discovery" supplied additional support for the bad faith inference.  Comm.'s Supp. Br. at 8–9 (quoting *Chen*, 87 A.3d at 653, 692).  The lack of discovery and any attendant inferences that could be drawn therefrom does not diminish Plaintiffs' theory in this case.

[53] *See also Johnson v. Shapiro*, 2002 WL 31438477, at *8 (Del. Ch. Oct. 18, 2002) (rejecting an exculpation defense raised by a director, explaining that "when a party has 'averred sufficient evidence to permit the inference that one or more defendants may have knowingly withheld material information from the company's shareholders,' then such allegations may be deemed to implicate a 'violation of the directors' duty of loyalty'" (quoting *In re Reliance Sec. Litig.*, 91 F.Supp.2d 706, 731– 32 (D. Del. 2000)); *PLX,* Tr. at 52:7–54:2 (rejecting an exculpation defense and sustaining disclosure claims related to directors' knowledge of undisclosed projections).

[54] Comm.'s Supp. Opening Br. at 6.

as material, how can one fault the Committee Defendants? It is a fair question, but it ignores the law of the case. The Supreme Court held that the identified information is material, so it is. And it is reasonably conceivable that the Committee Defendants knowingly withheld it. That is enough to state a non-exculpated claim against them.

B. The Implied-Covenant Argument

Defendants have moved to dismiss Count V of the Complaint claiming that Inovalon and the Director Defendants breached the covenant of good faith and fair dealing implied in Article IV, Section D(2)(c) of the Charter.[55] That provision authorizes "different treatment of the shares of each class" when "approved by the affirmative vote of the holders of a majority of the outstanding shares of Class A Common Stock and Class B Common Stock, each voting separately as a class."[56] Plaintiffs concede that Inovalon obtained approval from holders of a majority of the outstanding shares of Class A and Class B Common Stock voting, each voting separately as a class. Plaintiffs argue, however, that Defendants breached the Charter because the stockholder vote was uninformed.[57]

Plaintiffs base their argument on *Dieckman v. Regency GP LP*,[58] where the Supreme Court reversed the dismissal of a claim for breach of a limited partnership

---

[55] Compl. ¶¶ 33, 255–259.

[56] *Id.* ¶ 33.

[57] Pls.' Ans. Br. to Supp. Mot. to Dismiss at 14–15.

[58] 155 A.3d 358 (Del. 2017).

agreement where the unitholder vote was not fully informed.[59]  The high court reasoned that the limited partnership agreement contained an implied obligation not to mislead unitholders when soliciting their approval.  The Supreme Court thus deemed the approval vote not effective and sustained the plaintiff's contract claim.[60] Plaintiffs argue that the Charter, like the limited partnership agreement in *Dieckman*, contains an implied obligation not to mislead stockholders when soliciting their approval.[61]

Plaintiffs' reliance on *Dieckman* ignores the nature of the implied covenant and important distinctions between alternative entity and corporate law.  The implied covenant is a "cautious enterprise"[62] that courts invoke to "infer contract terms to handle developments or contractual gaps that the asserting party pleads neither party anticipated and courts will invoke the implied covenant to imply terms when necessary to protect the reasonable expectations of the parties."[63]  Parties to alternative entity agreements have the freedom to eliminate or modify fiduciary obligations that cannot be altered in the corporate context.[64]  For implied covenant

---

[59] *Id.* at 361–62.

[60] *Id.* at 368–69.

[61] Pls.' Ans. Br. to Supp. Mot. to Dismiss at 13–14.

[62] *Oxbow Carbon & Minerals Hldgs., Inc. v. Crestview-Oxbow Acq., LLC*, 202 A.3d 482, 506–07 (Del 2019) (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010)).

[63] *Baldwin v. New Wood Resources LLC*, 283 A.3d 1099, 1116 (Del. 2022) (quoting *Dieckman*, 155 A.3d at 367) (cleaned up).

[64] *See, e.g.*, 6 *Del. C.* § 18-1101(c) ("To the extent that, at law or in equity, a member or manager or other person has duties (*including fiduciary duties*) to a limited

purposes, that freedom to eliminate fiduciary obligations informs the parties' reasonable expectations when contracting.

In *Dieckman*, the limited partnership agreement eliminated default fiduciary obligations and included a safe-harbor provision that operated similar to *MFW*. The safe-harbor provisions insulated conflicted transactions from judicial review where the general partner obtained special approval by an independent conflicts committee as well as approval by an unaffiliated unitholder.[65] The high court emphasized the nature of the contractual provision at issue in its decision, observing that "[t]he favorable vote led not only to approval of the transaction, but *allowed the General Partner to claim the protections of the safe harbor and immunize the merger transaction from judicial review*."[66] The implied covenant analysis required the Court to ask what the parties reasonably expected when displacing the fiduciary regime. And the Court reasoned that it was "obvious" that the parties would have reasonably

---

liability company or to another member or manager or to another person that is a party to or is otherwise bound by a limited liability company agreement, the member's or manager's or other person's duties may be expanded or restricted or eliminated by provisions in the limited liability company agreement; provided, that the limited liability company agreement may not eliminate the implied contractual covenant of good faith and fair dealing." (emphasis added)); 6 *Del. C.* § 17-1101(d) ("To the extent that, at law or in equity, a partner or other person has duties (*including fiduciary duties*) to a limited partnership or to another partner or to another person that is a party to or is otherwise bound by a partnership agreement, the partner's or other person's duties may be expanded or restricted or eliminated by provisions in the partnership agreement; provided that the partnership agreement may not eliminate the implied contractual covenant of good faith and fair dealing." (emphasis added)).

[65] *Dieckman,* 155 A.3d at 360.

[66] *Id.* at 367–68 (emphasis added).

expected "that the general partner not engage in misleading or deceptive conduct to obtain safe harbor approvals."[67]

Because fiduciary duties cannot be eliminated in the corporate context, I do not need to speculate as to the parties' expectations when displacing a fiduciary regime here. There is no space for or purpose to the implied covenant in this context. Count V is dismissed.

## III.   CONCLUSION

Defendants' motions to dismiss are granted in part and denied in part. Count V is dismissed and the Committee Defendants' motion under *Cornerstone* is denied. The parties shall submit a form of order memorializing this ruling within one week.

Sincerely,

*/s/ Kathaleen St. Jude McCormick*

Chancellor

cc:     All counsel of record (by *File & ServeXpress*)

---

[67] *Id.* at 361.